Sylvia **AVERBACH**, Appellant,

v.

**RIVAL MANUFACTURING CO.**

No. 86–1196.

United States Court of Appeals,
Third Circuit.

Argued Oct. 14, 1986.

Decided Jan. 20, 1987.

John J. O'Brien, III (argued), Philadelphia, Pa., for appellant.

William T. Campbell, Jr. (argued), Robert B. Mulhern, Jr., Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellee.

Before GIBBONS, Chief Judge, BECKER, Circuit Judge and BROWN, District Judge.*

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Sylvia Averbach appeals from an order dismissing, pursuant to Fed.R.Civ.P. 12(b), her complaint seeking relief from a judgment. The judgment from which she seeks relief was entered in favor of the defendants in a product liability action in the United States District Court for the Eastern District of Pennsylvania, *Averbach v. Rival Manufacturing Company*, Civil No. 78–1350, following a jury verdict on June 5, 1981. No appeal was taken from that judgment. On September 28, 1984 Averbach filed a Fed.R.Civ.P. 60(b) motion seeking a new trial. That motion was denied because it was filed more than a year after the judgment from which relief was sought, and this court affirmed on November 1, 1985. While the appeal was pending this separate action was filed in May, 1985. It pleads two counts: violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (1982 & Supp. III 1985) (RICO), and common law fraud. We hold that the RICO count fails to state a claim upon which Averbach may obtain relief from a judgment. We also hold that the common law fraud count would permit proof of facts which could afford relief from a judgment, that there was subject matter jurisdiction of that count, and that it should not have been dismissed at the pleading stage.

## I.

In the underlying action Averbach sought to recover damages resulting from a fire in her home which, she claimed, was caused by a defective Rival electric can opener. During discovery in that action Averbach served on Rival Manufacturing Company an interrogatory asking:

If the Defendant has within the past five years received any complaints of an occurrence similar to that allegedly experienced by the Plaintiff, please state for each such complaint:

(a) Its date;

(b) Its substance, including a description of the factual circumstances;

(c) The name and address of the person making the complaint.

Plaintiff's Interrogatories, Civ. No. 78–1350 at 10. Rival Manufacturing Company, on July 1, 1979, responded:

(a) December 7, 1976.

(b) The claim was for property damage to a house. It was alleged that a Rival Model 731/1 Can Opener/Knife Sharpener caused a fire. The evidence did not support the claimant's allegations, the claim was denied by the Company and dropped by the claimant.

(c) This was a subrogation claim by State Farm Fire and Casualty Company, 5725 Foxridge Drive, Shawnee Mission, Kansas 66202.

Defendant Rival's Answers to Plaintiff's Interrogatories, Civ. No. 78–1350 at 5–6. No other occurrence was disclosed. A similar interrogatory served on Rival Manufacturing Company by a cross-claimant, the retail seller of the can opener, S. Klein Department Stores, was answered identically. Thus Averbach was informed of a single fire damage claim, made on behalf of a fire insurer, which that insurer apparently dropped after inquiry. At trial the jury decided in favor of the defendant.

In the instant action the complaint alleges that in August, 1983 Averbach's counsel learned that the Consumer Products Safety Commission had information about Rival

---

* Honorable Garrett E. Brown, Jr., United States District Judge for the District of New Jersey, sitting by designation.

electric can openers causing fires. Counsel obtained copies of the Commission's records which disclosed that between 1968 and 1974 Rival Manufacturing Company received 23 complaints of fires, 22 of which involved Rival electric can openers. In 1975 two more fires were brought to Rival's attention and in 1976 two others were reported. In addition, after the date of the answer to the interrogatory but before trial Rival received reports of fires started by can openers in California, Chicago, and Philadelphia. All of these reports indicated that the arrangement of the electric switch was such that the device remained on at low speed when not in use, causing a heat buildup to the point of combustion.

If the information from the files of the Consumer Products Safety Commission about fires begun by Rival electric can openers is true, the answers to interrogatories served in the underlying action are grossly false. Rival would have had complaints, as of July 1, 1979, of at least 26 similar occurrences, not the one incident that was disclosed. The complaint alleges that, had truthful answers been given, Averbach's presentation to the jury would have been much stronger, and could have produced a different verdict.

## II.

In Count I Averbach alleges that by serving through the mails its false answers to interrogatories, Rival Manufacturing Company engaged in a pattern of racketeering activity, thereby corrupting an enterprise, the United States District Court for the Eastern District of Pennsylvania. The theory of the complaint is that the district court is an enterprise and that Rival Manufacturing Company, by serving the false answers to interrogatories, participated in the conduct of that enterprise's affairs, all within the meaning of 18 U.S.C. § 1962(c) (1982).

We agree that a court may be an enterprise within the meaning of RICO.

See *United States v. Bacheler*, 611 F.2d 443, 450 (3d Cir.1979) (Philadelphia Traffic Court); *United States v. Herman*, 589 F.2d 1191 (3d Cir.1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979) (Pittsburgh Magistrates); *United States v. Vignola*, 464 F.Supp. 1091, 1095 (E.D.Pa.), *aff'd mem.*, 605 F.2d 1199 (3d Cir.1979), *cert. denied*, 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980), (Philadelphia Traffic Court). In those cases in which courts have been recognized as RICO enterprises, however, the participants engaged in patterns of activities designed to corrupt the operation of the courts' own processes. Whereas litigants before courts call upon the courts to exercise the judicial process, they do not participate in it in the sense intended by Congress in 18 U.S.C. § 1962(c) (1982). Such litigants do not share with the court's personnel a common purpose with respect to the activity complained of. Indeed Averbach's allegations suggest that while those responsible for conducting Rival Manufacturing Company's defense of product liability litigation may have had a common or shared purpose, that purpose was quite at variance with those of the judges and support personnel of the district court. If Averbach's allegations are true, no more occurred with respect to the enterprise in question than to mislead those who conducted it. That is not, in our view, equivalent to the participation in its affairs which is required by 18 U.S.C. § 1962(c) (1982).

Since Averbach's allegations fall short of a charge that Rival Manufacturing Company participated in the affairs of the district court, that court properly dismissed Count I of her complaint for failure to state a claim upon which relief could be granted.[1]

## III.

The district court, having dismissed the RICO count as to which there was federal question subject matter jurisdiction under 28 U.S.C. § 1331 (1982), treated Averbach's common law fraud claim as a pendent state

---

**1.** Averbach did not plead, and does not here contend that Rival Manufacturing Company's affairs were conducted in such a manner as to make Rival an enterprise for RICO purposes.

law claim. That claim was dismissed based on *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), which held that if federal claims are dismissed before trial, pendent state claims ordinarily should be dismissed as well. Thereafter Averbach moved to amend her complaint to rely upon diversity jurisdiction. The district court ruled that leave to amend was required because a Rule 12(b) motion had already been granted. *See* Fed.R.Civ.P. 15(a). In deciding the motion, the court considered whether the complaint as amended would survive a motion to dismiss, and concluded that it would not. Thus, purporting to apply the pleading standard of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the court ruled that the complaint failed to state a claim on which relief from a judgment could be obtained on the ground of common law fraud.

■ In our view, leave to amend probably was not required because the complaint, although mentioning only 28 U.S.C. § 1331 (1982) and 28 U.S.C. § 1337 (1982), on its face may satisfy 28 U.S.C. § 1332 (1982), which confers diversity jurisdiction on the federal courts. It alleges that Averbach is a citizen of Pennsylvania and the amount in controversy exceeds $10,000. It pleads Rival's address in Kansas City, Missouri and refers to the underlying action which was a diversity suit. Thus Averbach's motion to amend may have been surplusage. Whether or not it was necessary, however, the motion must be considered in light of the direction that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653 (1982). Since there unquestionably is diversity jurisdiction, and Rival Manufacturing Company always was aware of that fact, we will treat the complaint accordingly.

■ The next question we must address, therefore, is whether the complaint states a claim upon which relief from the instant judgment can be obtained on the ground of fraud. The district court, citing *Thomas v. Seaman*, 451 Pa. 347, 304 A.2d 134 (1973),

referred to the five standard elements of a cause of action for fraud: (1) a misrepresentation of fact, (2) fraudulently uttered, (3) with intent to induce reliance, (4) and inducing justifiable reliance, (5) and to the injury of the injured party. The court concluded that "[t]he complaint fails to allege that defendants intended to induce action on the part of the plaintiff or that plaintiff justifiably relied upon the alleged misrepresentations." *Averbach v. Rival Mfg. Co.*, Civ. No. 85–2794 (E.D.Pa. Mar. 12, 1986) [Available on WESTLAW, DCTU database]. We cannot agree. The complaint explains that Averbach's theory in the underlying case, supported by the report of the Fire Marshal who investigated the fire, was that the fire started when a defective switch in the Rival electric can opener permitted the unit to continue operating when not in use, causing heat and ultimately combustion. It explains further that in the discovery stage, through the interrogatory quoted above, it sought information that is patently relevant to that theory, that Rival Manufacturing Company had such information in its possession with respect to 26 incidents consistent with that theory, and that the answer falsely referred only to one. It is literally true that the complaint does not allege in *haec verba* that the interrogatories were served for the purpose of obtaining information for use in the preparation or presentation of Averbach's case, that Rival Manufacturing Company knew of such purpose, and that Rival Manufacturing intended to cause Averbach to rely on its false answer. After alleging that Rival was aware of facts inconsistent with that answer, however, the complaint charges:

33. It is clear from the foregoing evidence that Rival was not candid with the Plaintiff during the discovery process.

34. Had Rival been truthful in its answers to Interrogatories the Plaintiffs could have presented to the jury the fact that the Rival can opener fires were a common and serious problem known to Rival.

Plaintiff's Complaint, Civ. No. 85–2794 at 19. We find unpersuasive the proposition that the complaint was deficient in failing to allege the self-evident purpose of asking for information under penalty of false swearing in the course of discovery, or the self-evident purpose of responding to a request for such information. As the complaint alleges, "[t]he acts and omissions of defendant described herein plainly constitute a scheme or artifice reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* at 20. Thus the district court's reason for finding the fraud count to be legally insufficient cannot be accepted.[2]

Alternatively, on the authority of Rule 60(b)(3), the district court reasoned that in an independent action seeking relief from a judgment brought more than a year after the one year time limit in Fed.R.Civ.P. 60(b), the plaintiff should have to prove more than would be appropriate for relief, within that period. That part of Rule 60 permits relief from a final judgment, on motion made within one year, for "fraud (whether heretofore denominated intrinsic or extrinsic) misrepresentation, or other misconduct of an adverse party." Fed.R. Civ.P. 60(b)(3). The court reasoned that unless something more was required in actions commenced more than one year after judgment, the one year limitation on Rule 60(b)(3) relief would be seriously compromised. Therefore, the court concluded, no independent action could be entertained for relief from a judgment after one year except for "fraud on the court" as distinguished from fraud on a party. Moreover, fraud on the court "did not include perjury," which is essentially what Averbach alleged, but only egregious misconduct that involves corruption of the judicial process itself.

There are several problems with this line of reasoning. The first is textual. The one year limit in Rule 60(b) applies only to three of six listed grounds for relief from judgment: (1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence, and (3) fraud. It does not apply to the catchall provision covering "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). Moreover Rule 60 provides that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding ...], or to set aside a judgment for fraud upon the court." Thus the one year time limit in the rule, by virtue of the rule's very text, does not apply to independent actions. The Note of the Advisory Committee on Rules is quite clear in this respect.

> If the right to make a motion is lost by the expiration of the time limits fixed in these rules, the only other procedural remedy is by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action. Where the independent action is resorted to, the limitations of time are those of laches or statutes of limitations.

Fed.R.Civ.P. 60(b) advisory committee note. The laches or statute of limitations to which the Advisory Committee Note refers are to the governing time bars under the law which give rise to the independent cause of action.

Nor does the rule purport to specify either the "other reasons justifying relief from the operation of a judgment" or the substantive rules which may authorize a court in an independent action to grant relief from a judgment. The reason for the absence of such a specification is plain.

---

**2.** In determining whether a complaint states a cause of action we are bound to consider not only the statements in the pleading itself but also to draw reasonable inferences in favor of the pleader. *Quinones v. United States,* 492 F.2d 1269, 1273 (3d Cir.1974). Here we infer that defendants are alleged to have made their false statements with the intention of inducing plain-

tiff to rely detrimentally thereon. We are therefore unwilling to hold that this complaint does not state a cause of action for purposes of Rule 12(b)(6). Upon remand plaintiff may wish to consider amending her complaint by pleading fraud with greater particularity. *See* Fed.R. Civ.P. 9(b).

Prior to the adoption of Rule 60 both the substantive and the procedural law dealing with relief from judgment were complex. The Advisory Committee

> endeavored [in 1946] to amend the rules to permit, either by motion or by independent action, the granting of various kinds of relief from judgments which were permitted in the federal courts prior to the adoption of these rules, and the amendment concludes with a provision abolishing the use of bills of review and the other common law writs referred to, and requiring the practice to be by motion or by independent action.

*Id.* The change in 1946 thus was intended to eliminate the procedural complexities of the former practice, while preserving two alternative remedies, a motion or an independent action.

Prior to 1946, fraud was not an express ground for a Rule 60(b) motion, and a dispute arose over whether relief on that ground could be obtained by motion. Rule 60(b)(3) was added in that year, and the advisory committee explained;

> The amendment settles this problem by making fraud an express ground for relief by motion; and under the saving clause, fraud may be urged as a basis for relief by independent action insofar as established doctrine permits.

*Id.* The advisory committee reference to established doctrine is to the substantive law, found elsewhere than in the Federal Rules of Civil Procedure, for relief from judgment.

> It should be noted that Rule 60(b) does not assume to define substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief.

*Id.* Neither the text of Rule 60(b) nor its legislative history permits a construction which would limit an independent action for relief from a judgment to "fraud on the court" as distinguished from fraud of some other sort. Indeed such an attempt by the rulemakers to affect rights claimed under the substantive law would probably have exceeded the authority conferred in the Rules Enabling Act, 28 U.S.C. § 2072 (1982). *See* Burbank, *Interjurisdictional Preclusion, Full Faith and Credit and Federal Common Law: A General Approach,* 71 Cornell L.Rev. 733, 772 (1986).

One may reasonably ask what was the purpose of the drafters in subjecting Rule 60(b)(1), (2) and (3) motions to a one year time limit if not to create a substantive time bar. The answer, as is so often the case with the Federal Rules of Civil Procedure, lies in the former practice. Prior to their adoption, there were terms of court, and certain common law methods of obtaining relief from judgments were deemed to be unavailable after the expiration of the term at which the judgment was entered. *E.g., United States v. Mayer,* 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129 (1914). When both the terms of court and the common law writs were abolished, the time limit with respect to some motion equivalents of the former common law writs was substituted. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2866, at 227 n. 66 (1973). Under the old practice, however, the expiration of the term of court had no effect upon the timeliness of an independent action for relief from judgment. The rule carries forward this same principle. "The motion procedure is subject to a one year limit, which does not apply to the independent action for fraud." *Id.* § 2868, at 240.

Additionally, the separate treatment in Rule 60 of the somewhat confusing concept of "fraud on the court" as a distinct ground for relief is traceable to the well-known decision in *Hazel-Atlas Glass Company v. Hartford-Empire Company,* 322 U.S. 238, 248–49, 64 S.Ct. 997, 1002–03, 88 L.Ed. 1250 (1944), *modified* in *Standard Oil Co. v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976) (per curiam), in which it was held that a court has inherent power to set aside a judgment obtained by such a fraud, even in circumstances where the adverse party might be barred by laches or lack of diligence from obtaining relief. As the advisory committee explains:

[T]he rule expressly does not limit the power of the court, when fraud has been perpetrated upon it, to give relief under the saving clause. As an illustration of this situation, see *Hazel-Atlas Glass Co. v. Hartford-Empire Co.* ...

Fed.R.Civ.P. 60(b). What is required to trigger the court's inherent power to grant relief even when equitable principles might bar a party from such relief has been a matter of controversy.

Perhaps the principal contribution of all these attempts to define 'fraud on the court' and to distinguish it from mere 'fraud' is as a reminder that there is a distinction. Any fraud connected with the presentation of a case to a court is a fraud upon the court, in the broad sense. That cannot be the sense in which the term is used in the final saving clause of Rule 60(b). The remedy for most cases of fraud must continue to be by motion under Rule 60(b)(3) or by an independent action, subject to the procedural limitations applicable to those remedies.

11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2870, at 253 (1973) (footnotes omitted). Something more than ordinary fraud may be required in order to trigger the court's authority to disregard limitations on available relief in an independent action or equitable defenses to an independent action for relief from a judgment. The *Hazel-Atlas* rule, however, otherwise has nothing to do with the elements of a cause of action for such relief.

Rule 60(b)(3) covers all fraud "whether heretofore denominated intrinsic or extrinsic." No similar language appears in the saving clause which preserves the independent action. Its absence has led some courts to conclude that if relief from a judgment is sought by an independent action the old distinction between "extrinsic" and "intrinsic" fraud persists.[3] A leading commentator notes, however, that

[The distinction] is most unfortunate, if true. [It] rests on cloudy and confused

authorities, its soundness as a matter of policy is very doubtful, and it is extremely difficult to apply. It ought not to persist as a limit on independent actions now that it has been abolished on motions.

11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2868, at 240–41 (1973) (footnotes omitted). Moreover, the "extrinsic"—"intrinsic" distinction which is based on a statement in *United States v. Throckmorton*, 98 U.S. (8 Otto) 61, 25 L.Ed. 93 (1878), was overruled, if it was ever the law, by *Marshall v. Holmes*, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870 (1891). The distinction probably would not in any event survive *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), at least with respect to judgments in diversity cases. As *Guaranty Trust Co. v. York* makes clear, there is no longer a federal substantive law of equitable remedies. *Id.* Furthermore, even before the 1946 amendment to Rule 60(b), which added Rule 60(b)(3), the extrinsic-intrinsic fraud distinction was rejected by this court. *Publicker v. Shallcross*, 106 F.2d 949, 950 (3d Cir.1939), *cert. denied*, 308 U.S. 624, 60 S.Ct. 379, 84 L.Ed. 521 (1940). *See also Bandai America Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Schum v. Bailey*, 578 F.2d 493, 506 (3d Cir.1978) (Gibbons, J., concurring). Thus we must reject Rival Manufacturing Company's argument, in support of the order appealed from, that its fraud, if any, was intrinsic.

■ Summarizing, we hold that Count II of Averbach's complaint, measured against the pleading standards of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), would permit proof of facts which would authorize relief from a judgment on the ground of fraud. We hold further that the elements of a cause of action for such

---

**3.** *See e.g., Dowdy v. Hawfield,* 189 F.2d 637 (D.C.Cir.), *cert. denied,* 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628 (1951).

relief in an independent action are not different from those elements in a Rule 60(b)(3) motion, and that the time limit on such a motion does not apply to an independent action.[4] Moreover, since there is diversity of citizenship, there is a separate basis for subject matter jurisdiction over Averbach's independent action. Thus we need not consider whether an independent action for relief from a judgment falls within the ancillary jurisdiction of a federal court which rendered the judgment.

Given these holdings with respect to Count II, we have considered whether the prior ruling of the district court denying Averbach's Rule 60(b)(3) motion, which this court affirmed, might afford a separate ground for affirmance. We hold that it does not. That ruling was predicated solely upon the timeliness of the motion. The legal sufficiency of the claim of fraud was not addressed. The time bar in Rule 60, as we have held, has no application to this lawsuit.

### IV.

The judgment appealed from will be affirmed insofar as it dismissed Averbach's Count I RICO claim. It will be reversed insofar as it dismissed Averbach's common law fraud Count II, and the case will be remanded for further proceedings on that count.

**4.** Judge Becker agrees that the fraud alleged in this case could be redressed in an independent action. Further, he confesses his inability to see any basis for distinguishing the elements of a 60(b)(3) action from those of an independent action. The only possible basis Judge Becker can envision for such a distinction is the difference between extrinsic and intrinsic fraud. This circuit has established, however, that the distinction is chimerical. *See Publicker v. Shallcross,* 106 F.2d 949 (3d Cir.1939), *cert. denied,* 308 U.S. 624, 60 S.Ct. 379, 84 L.Ed. 521 (1940). Nonetheless, Judge Becker is not certain that the elements of an independent action to reopen a judgment for fraud are always identical to the elements of a 60(b)(3) action, as Judge Gibbons appears to hold. Judge Becker would prefer to reserve that issue.