Sylvia **AVERBACH**, Appellant,

v.

**RIVAL MANUFACTURING COMPANY.**

No. 88–1957.

United States Court of Appeals, Third Circuit.

Argued April 18, 1989.

Decided July 19, 1989.

Rehearing and Rehearing Denied Aug. 17, 1989.

claim may be asserted to recoup a government contract claim. *Johnson,* 853 F.2d at 631, n. 5.

John J. O'Brien, III (argued), Philadelphia, Pa., for appellant.

Robert B. Mulhern, Jr. (argued), and William T. Campbell, Jr., Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellee.

Before SEITZ*, SLOVITER, and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant, Sylvia Averbach, brought this suit alleging that appellee, Rival Manufacturing Company, had committed common law fraud in filing false answers to interrogatories in a prior product liability action between the parties which Averbach lost.

The district court in this case entered a judgment notwithstanding the verdict for Rival following the jury's responses to special interrogatories in a bifurcated trial. The principal issue before us is whether the jury could properly have found that Averbach relied on Rival's answers to interrogatories in the prior action.

### I.

### *Facts and Procedural History*

In 1977, Averbach suffered a fire in her home which she claimed was caused by an electric can opener with a design defect that allegedly caused continuous running, overheating, and ignition of the appliance. The can opener was manufactured by Rival. Averbach filed a product liability suit against Rival in the District Court for the Eastern District of Pennsylvania, alleging more than $200,000 in damages and invoking that court's diversity jurisdiction. One of the interrogatories propounded by Averbach to Rival read:

40. If the defendant has within the past five years received any complaints of an occurrence similar to those allegedly experienced by the plaintiff, please state for each such complaint:

(a) Its date;

(b) Its substance, including a description of the factual circumstances;

(c) The name and address of the person making the complaint.

App. at 65.

Rival's response was:

40. a. December 7, 1976.

b. The claim was for property damage to a house. It was alleged that a Rival Model 731/1 Can Opener/Knife Sharpener caused a fire. The evidence did not support the claimant's allegations, the claim was denied by the Company and dropped by the Claimant.

App. at 75.

The case was tried before a jury, which returned a verdict in favor of Rival in June 1981, from which Averbach did not appeal.

* Since the date of argument of this case, Judge Seitz has taken senior status.

In September 1984, Averbach filed a motion for a new trial under Fed.R.Civ.P. 60(b) on the ground that she had recently received information showing that Rival falsely answered her Interrogatory Question No. 40, referring to records of the Consumer Product Safety Commission (CPSC) with respect to numerous complaints about fires caused by Rival's can openers during the period specified in the interrogatory. The district court denied the motion because it was not filed within one year after judgment as required for motions for new trial under Fed.R.Civ.P. 60(b)(3) based on fraud or misrepresentation, and this court affirmed by judgment order.

In May 1985, Averbach filed a two-count complaint against Rival in the Eastern District of Pennsylvania, this suit based on the allegedly false answer to the interrogatory in the product liability lawsuit. Count One was based on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S. C. § 1961 *et seq.*, and Count Two on common law fraud. The district court dismissed the complaint for failure to state claims upon which relief could be granted. On appeal, this court affirmed the dismissal of the RICO claim, holding that Averbach could not claim that the court system was an enterprise for purposes of RICO because the court personnel and litigants lacked a common purpose. However, we reversed the dismissal of the common law fraud claim, concluding that Averbach's complaint sufficiently stated a cause of action. *Averbach v. Rival Mfg. Co.*, 809 F.2d 1016, 1018–20 (3d Cir.), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3187, 96 L.Ed.2d 675 (1987) and 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987). As we noted, "[i]f the information from the files of the [CPSC] about fires begun by Rival electric can openers is true, the answers to interrogatories served in the underlying action are grossly false." *Id.* at 1018.

With respect to the district court's conclusion that the complaint failed to allege justifiable reliance as required under Pennsylvania law, we found "unpersuasive the proposition that the complaint was deficient in failing to allege the *self-evident purpose* of asking for information under penalty of false swearing in the course of discovery, or the *self-evident purpose* of responding to a request for such information." *Id.* at 1020 (emphasis added). We remanded the case to the district court with instructions to proceed on the common law fraud count, which had an independent jurisdictional basis in diversity of citizenship.

Over Averbach's objection, the district court agreed to Rival's proposal to try the case by means of a bifurcated trial, with the first phase directed only to the question of whether the interrogatory responses were fraudulent, and the second phase to the issues of causation and damages. We note that this division is not along the common line of bifurcation between liability and damages. Nonetheless, Fed.R.Civ. P. 42(b) expressly authorizes a separate trial of any separate issue under certain circumstances, subject to Seventh Amendment considerations.

The court advised the jury that the trial would be divided into two phases, saying: "During the first phase we will consider only whether there was a misrepresentation of fact fraudulently uttered by defendant with the intent to cause reliance by plaintiff and … whether such misrepresentation did, in fact, cause reliance by plaintiff. And I told you that the questions of causation and damages will be reserved for the second phase of this trial." App. at 749.[1]

At trial, Averbach presented evidence by way of a stipulation of uncontested facts of the occurrence of the fire, Averbach's earlier suit against Rival, Averbach's propounding of the relevant interrogatories to Rival and Rival's answer identifying only one complaint. The stipulation also stated that,

---

1. It was agreed that under this court's precedent, it was not necessary to reenact the underlying product liability action to establish causation. *See Honeywell, Inc. v. American Standards Testing Bureau, Inc.*, 851 F.2d 652, 655–57 (3d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 795, 102 L.Ed.2d 787 (1989) (in negligence action for failure to supply a promised witness at trial, causation may be established by expert testimony).

"[b]etween January 1, 1973 and July 1, 1979 (when the plaintiff's First Set of Interrogatories was answered), 81 claims that fires allegedly caused by different models of electric can openers were reported to Rival. There was one additional claim that a Rival electric can opener allegedly caused a fire between July 1, 1979 and September 14, 1979. From January, 1973 to June, 1981, Rival received over 100 alleged claims that its can opener products caused fires." App. at 616.

Averbach presented four live witnesses: Frank Kensill, an electrical contractor who reviewed the complaints received by Rival and the CPSC and who testified as an expert that, in light thereof, Rival's answers to Averbach's interrogatories "were false and purposely misleading," App. at 823; John Fred Jesse, an engineer employed by Rival, who had authored a memorandum in March 1979 reporting with respect to Rival's can opener products that "[n]umerous burn outs have been observed," App. at 1010; Gerald Waleski, another Rival employee, who had prepared Rival's answers to the interrogatories; and former state Judge Paul Chalfin, who had been hired as an expert witness for Rival and who had testified in deposition that Rival's answers were not dishonest or fraudulent. None of Averbach's witnesses testified or was in a position to testify that plaintiff relied on the false answers to the interrogatories in preparing the product liability suit for trial.

Rival's defense at trial focused on its contention that its answers to interrogatories were truthful because they were directed only to the specific model can opener in Averbach's home, and did not encompass its numerous other models. Rival called Charles G. Young, III, an attorney, who testified about discovery procedures and gave his opinion that Rival's answer to Interrogatory No. 40 was truthful. Young explained that answers to interrogatories are sworn statements and that "you really follow up on discovery in a step fashion.... [O]ftentimes you'll see a set of interrogatories ... that are designed to learn certain information and then that information that you learn may cause you to file additional written questions seeking more information." App. at 1167–68. On cross-examination, Young acknowledged that he presumed all sworn answers to discovery requests to be true.

Rival made two motions for a directed verdict on the ground that Averbach had failed to prove all elements of fraud including reliance, but the motions were denied by the court. The court instructed the jury on the elements of common law fraud under Pennsylvania law, and, with respect to reliance, charged that the jury must find "that the Defendant intended that the Plaintiff rely on the Defendant's misrepresentation and ... that the Plaintiff did rely on the Plaintiff's misrepresentation." App. at 1243.

The jury responded affirmatively to each of the following special interrogatories:

1. Do you find that plaintiff, Sylvia Averbach, has proven by clear and convincing evidence that the defendant, Rival Manufacturing Company, made a misrepresentation of fact in answering interrogatories during discovery in the 1981 products liability action?

.  .  .  .  .

2. Do you find that the plaintiff, Sylvia Averbach, has proven by clear and convincing evidence that the misrepresentation uttered by the defendant, Rival Manufacturing Company, was fraudulent?

.  .  .  .  .

3. Do you find that plaintiff, Sylvia Averbach, has proven by clear and convincing evidence that the misrepresentation uttered by defendant, Rival Manufacturing, concerned a material fact?

.  .  .  .  .

4. Do you find that the plaintiff, Sylvia Averbach, has proven by clear and convincing evidence that the fraudulent misrepresentation was uttered by the defendant, Rival Manufacturing Company, with the intent to induce reliance on the part of the plaintiff, Sylvia Averbach?

.  .  .  .  .

5. Do you find that the plaintiff, Sylvia Averbach, has proven by clear and

convincing evidence that the plaintiff did in fact rely on a fraudulent misrepresentation uttered by the defendant, Rival Manufacturing Company?

App. at 229–31. These answers reflect, *inter alia,* the jury's rejection of Rival's defense that it was entitled to view the interrogatory as limited to the model of can opener owned by Averbach.

Following the jury's return of these answers, Rival moved that this jury be dismissed and a new jury be chosen to hear Phase Two of the trial. Rival argued that it would otherwise be prejudiced because "this jury ... is not about to give Rival a reasonable trial on the second issue [since it] already knows about 100 fire claims." App. at 1270. The court granted this motion and dismissed the jury.

Rival also moved for a judgment notwithstanding the verdict or in the alternative a new trial on the ground that, *inter alia,* Averbach failed to prove by clear and convincing evidence that she justifiably relied on Rival's answer to the interrogatory. The district court agreed, stating that none of the witnesses presented by Averbach had been involved in the preparation of her product liability case and therefore none testified or could testify from personal knowledge concerning plaintiff's preparation or trial of the first case. The court granted a j.n.o.v., finding that "[p]laintiff's evidence of fraud was critically deficient of any relevant evidence upon which the jury could conclude Averbach relied in fact on the response." App. at 224.

## II.

### *The J.N.O.V.*

Averbach appeals from the entry of the j.n.o.v. On such an appeal, we are called upon to review the record in the light most favorable to Averbach and may not sustain the lower court's order " 'unless the record is critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief.' " *Link v. Mercedes–Benz of North Am.,* 788 F.2d 918, 921 (3d Cir.1986) (quoting *Dawson v. Chrysler Corp.,* 630 F.2d 950, 959 (3d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)).

Averbach argues, and Rival disputes, that the issue of reliance was to be addressed during the second phase of the trial, and therefore that she was not obliged to treat reliance in Phase One. However, the district court specifically put the parties on notice at the pretrial conference and in its opening remarks to the jury that the reliance element of fraud would be tried in Phase One. Averbach, therefore, may not now complain of surprise that reliance was included as an element to be proven in the first phase at trial.

We therefore turn to Averbach's argument that there was sufficient evidence to support the jury's affirmative finding of reliance. Without deciding whether justifiable reliance can always be inferred from sworn answers to discovery requests, we agree with Averbach that under the circumstances of this case there was a sufficient basis for the jury to have made that inference. While it might have been prudent for Averbach to have presented testimony from her trial counsel at the earlier trial that he relied on Rival's answer to interrogatory and therefore did not make further inquiries with respect to other similar fires, we cannot say that the record presented here was "critically deficient" of any evidence from which the jury properly could have inferred such reliance by Averbach. *See Link,* 788 F.2d at 921.

The jury had evidence that Averbach proffered an interrogatory in the product liability case specifically directed to eliciting information known to Rival of complaints of an occurrence similar to those experienced by the plaintiff and that Rival answered that interrogatory identifying only *one* such occurrence. The jury also had evidence that Rival knew of 100 such fires related to its can openers during the period from January 1973 to June 1981.

Rival's own expert witness, a lawyer experienced in civil litigation, testified that he assumed all sworn answers received in the course of discovery to be true and further described discovery as a process in which information obtained at one stage deter-

mined what further information would be sought at the next. Viewed in the light most favorable to Averbach, this evidence, along with the explanation of how the discovery process works, constituted a sufficient basis from which the jury could conclude that Averbach's counsel relied on Rival's interrogatory answers in preparing for and in conducting the product liability trial, and in foregoing further inquiry with respect to other fires.

It is well-recognized that complete and accurate responses to discovery are imperative to the functioning of the modern trial process. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir.1978) ("It is axiomatic that '[d]iscovery by interrogatory requires candor in responding.'" (quoting *Dollar v. Long Mfg., N.C.*, 561 F.2d 613, 616 (5th Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978))).

As the Supreme Court has explained:

> The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. Under the prior federal practice, the pre-trial functions of notice-giving, issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings..... The new rules, however, ... invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device ... to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in federal courts no longer need be carried on in the dark. The way is now clear ... for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

*Hickman v. Taylor*, 329 U.S. 495, 500–01, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 (1947) (footnotes omitted). The "[m]odern instruments of discovery" are thus a principal means by which trials are rendered "less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). *See generally* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2001 at 15 (1970) (describing purposes and uses of discovery).

The Federal Rules themselves recognize the reliance aspect of discovery, permitting parties to request information inadmissible at trial where such request is "reasonably calculated to lead to the discovery of admissible evidence." *See* Fed.R.Civ.P. 26(b)(1). Discovery could not serve the function of triggering subsequent inquiry if parties were not entitled to rely on the results obtained at each step. *See Rozier*, 573 F.2d at 1345 ("Our system of civil litigation cannot function if parties ... suppress information called for upon discovery.")

■ Averbach certainly cannot be faulted for failing to pry further by discovery into the very same inquiry aborted by Rival's misleading answer. In fact, Rule 26 was amended in 1983 in an attempt to address the problem of duplicative discovery. *See* Fed.R.Civ.P. 26(a) advisory committee's note, 1983 amendment. A litigant is entitled to accept answers to previous interrogatories as true, and to refrain from seeking additional discovery directed to the same issue. Because the Federal Rules of Civil Procedure are structured to elicit truthful answers given under oath, the opposing party, in circumstances such as presented here, may reasonably rely on interrogatory answers.

The Fifth Circuit in *Rozier* faced an analogous issue. After concluding that Ford Motor Company falsely stated in answers to interrogatories that it possessed no reports of the type the plaintiff inquired about, the court held that a new trial was warranted under a timely Rule 60(b)(3) motion because of Ford's misrepresentation. The court stated that Ford's nondisclosure prevented plaintiff from fully and fairly presenting her case because "[i]nevitably, information developed in the discovery stages of the case influenced the decision as to which theories would be emphasized at trial." 573 F.2d at 1342. The court thus

concluded that, "[w]e are left with the firm conviction that disclosure of the [requested information] would 'have made a difference in the way plaintiff's counsel approached the case or prepared for trial.'" *Id.* (citation omitted).

We noted in our earlier opinion in this case that the purpose of asking for information under penalty of false swearing in the course of discovery and of responding to such requests is "self-evident." *Averbach*, 809 F.2d at 1020. If the appellate courts recognize that discovery responses are calculated to elicit reliance, certainly we must uphold the jury's specific finding that there was such reliance.[2]

Because we conclude that there was a sufficient basis for the jury's affirmative response on the reliance element, the district court's entry of the j.n.o.v. cannot be sustained on the ground on which it was entered. The issue of Rival's fraud is now concluded unless there is some other error with respect to Phase One.

■ Under Fed.R.Civ.P. 50(c), a court granting a j.n.o.v. should at the same time "conditionally" dispose of all motions for a new trial. Rival made a new trial motion below on several grounds, and this motion remains pending at this time. The district court should therefore dispose of this motion on remand, *see Vander Zee v. Karabatsos*, 589 F.2d 723, 729 (D.C.Cir.1978), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979), and if the court rejects Rival's pending post-trial motions, it should proceed to trial on Phase Two, as Averbach requests.

Our disposition makes it unnecessary for us to rule at this time on Averbach's contention that the district court's dismissal of the jury that heard the evidence in Phase One violated her right to a jury trial under the Seventh Amendment. Rival, of course, having proposed the bifurcation and the dismissal of the first jury cannot now be heard to object. Averbach will be able to obtain review of claims of error related to these issues if she is aggrieved by the final outcome of the proceedings. *See, e.g., Helene Curtis Indus. v. Church & Dwight Co.*, 560 F.2d 1325, 1335 (7th Cir.1977), *cert. denied*, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978) (rulings related to separation of issues for trial pursuant to Rule 42(b) are "unappealable interlocutory order[s]").[3]

### III.

### *Averbach's Motion to Amend the Complaint*

■ Averbach also appeals from the district court's denial of leave to amend her complaint to plead fraud with more specificity, to request unspecified equitable relief, and to assert both a violation of what she termed the Consumer Protection Act (later explained to be the Consumer Product Safety Act (CPSA)) and of RICO. When this motion was first filed in October 1987, Averbach did not append a copy of her proposed amended complaint. The district court stated that the proposed complaint was needed so that it could evaluate the motion, and denied leave to amend as presented. It noted that the dismissal of the RICO count had been affirmed on ap-

---

**2.** The cases cited by Rival for the argument that there must be specific testimony of reliance are inapposite because they do not deal with reliance in the context of discovery where representations are sworn to be true. *Cf. Country Shindig Opry, Inc. v. Cessna Aircraft Co.*, 780 F.2d 1408, 1412 (8th Cir.1986) (remanding for new trial after verdict for plaintiff where plaintiff failed to present evidence that it relied on information contained in manufacturer's brochures); *Gunsalus v. Celotex Corp.*, 674 F.Supp. 1149, 1160 (E.D.Pa.1987) (reliance on cigarette company advertisements not established where ads "are not the kind of representations upon which reasonable people would rely").

**3.** We also reject Averbach's request that, in light of the possibility that a new trial will be ordered, we review her claims that the district court erred in various rulings on the admission of evidence. If no new trial order is granted these issues need not be reached since the jury's verdict in favor of Averbach in Phase One will be reinstated pursuant to this opinion. If the district court grants the motion for a new trial, the evidentiary rulings made at that trial will be fully reviewable on appeal from the final judgment entered thereafter. *See Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980).

peal, but it gave Averbach leave to renew the motion to amend adding a claim under the consumer protection statute and buttressing the fraud count if Averbach proffered an amended complaint.

Averbach failed to do so for more than three months. Then on March 11, 1988, four days before the deadline set for the close of discovery, Averbach filed another motion to amend her complaint. The district court denied this motion with prejudice, pointing out that it had been filed thirty-four months after the original complaint, more than three months after the court had dismissed the earlier motion without prejudice to renewal, and barely one month before the date set for trial.

The court rejected Averbach's contention that her delay resulted from the need to conduct further discovery, noting that the proposed amended complaint was identical to a complaint filed almost a year earlier in state court, which had been removed to federal district court and dismissed for improper splitting of a cause of action, a dismissal affirmed on appeal. *See Averbach v. Rival Mfg. Co.*, 845 F.2d 1009 (3d Cir.1988). The court also held that allowance of the proposed amendment at this late date would prejudice the defendant by asserting a new cause of action on the eve of trial. Finally, the court noted that the Consumer Product Safety Act claim did not identify the rule or order alleged to have been violated, and the plaintiff did not explain why the equitable relief sought would be appropriate in this case.

We review the trial court's denial of a request to amend the complaint for abuse of discretion. *Lewis v. Curtis*, 671 F.2d 779, 783 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). Factors the trial court may appropriately consider in denying a motion to amend include undue delay, undue prejudice to the opposing party, and futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Although amendment should be freely permitted, in this case the district court's grounds, as set forth in its opinion, demonstrate that its decision to deny Averbach leave to amend was within the permissible range of its discretion.

Obviously, Averbach suffered no adverse consequences from the inability to amend the fraud count in light of her success on that issue. As the district court concluded, adding a CPSA claim, even if legally viable, would introduce new issues into this already protracted litigation. Finally, we agree that Averbach's attempt to resurrect her previously dismissed RICO count eight months after this court affirmed the dismissal of that claim represented too long a delay.

IV.

*Conclusion*

For the reasons set forth above, we will reverse the district court's entry of a j.n. o.v. on the issue of fraud. We will remand the case so that the court may rule on Rival's pending motion for a new trial and, if the motion is not granted, for trial on the remaining stage of the bifurcated proceedings. We will affirm the district court's denial of Averbach's motion to amend her complaint.

Costs on appeal to be borne by appellee Rival.