**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-2585 and 19-3017
_____

DEANNA PIERCE,
                    Appellant

v.

CITY OF PHILADELPHIA,


_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-17-cv-05539)
District Judge: Honorable Gerald J. Pappert

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 31, 2020

_____

Before: GREENAWAY, JR., PORTER, and MATEY,
*Circuit Judges*

(Opinion Filed: April 27, 2020)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, *Circuit Judge*.

Deanna Pierce and Jennifer Albandoz interviewed for the same promotion in the Philadelphia Department of Prisons, a department of the City of Philadelphia. Albandoz received the promotion and became Pierce's supervisor. Pierce is Native American, and Albandoz is Hispanic. Pierce believed that Albandoz was promoted because the City wanted more Hispanics in senior positions. For that reason, she filed administrative complaints with federal and state agencies alleging race discrimination. Albandoz then began mistreating Pierce. Pierce eventually sued the City alleging race discrimination and retaliation under federal and state law.

The case proceeded to trial. A jury concluded that no discrimination occurred. But the jury also concluded that Albandoz retaliated against Pierce, and it awarded Pierce nominal damages. Pierce then filed several post-trial motions. The District Court denied all of them. For the following reasons, we will affirm.

**I**

Pierce and Albandoz were both Social Work Supervisors in the Philadelphia Department of Prisons ("PDP"). In May 2016, a vacancy arose for the position of Human Services Program Administrator ("HSPA").

A five-member panel interviewed Pierce and Albandoz. The panel included Blanche Carney, the Commissioner of the PDP and the ultimate decisionmaker. Pierce was ill on the day of the interview and admitted that she "didn't do well." App. 1173. The panel concluded that Albandoz performed well in her interview. The panel reached a

consensus that Albandoz was the better candidate, and no one recommended Pierce for the promotion. So, Carney promoted Albandoz, who became Pierce's supervisor.

After Albandoz was promoted, Pierce met with Deputy Commissioner Robert Tomaszewski and another PDP employee. Tomaszewski told Pierce that he believed that Carney was being pressured to hire Hispanics and that Albandoz was promoted because of her race. Pierce then filed a race discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). After filing the complaints, Albandoz treated Pierce in a "much more hostile . . . and [] dismissive manner." S. App. 82. Following that hostility, Pierce filed a second complaint with the EEOC and the PHRC, alleging discrimination, retaliation, and harassment.

When the situation did not improve, Pierce asked to be transferred to a new supervisor, but the PDP declined, citing "undue hardship" to the City. App. 659–60. Pierce also complained about Albandoz to the PDP's Office of Professional Compliance, but it took no action. Pierce then filed a third complaint with the EEOC and the PHRC, again alleging discrimination, retaliation, and harassment.

Pierce eventually brought this action in the District Court. She alleged race discrimination, retaliation, and harassment under Title VII of the Civil Rights Act; 42 U.S.C. §§ 1981 and 1983; the Pennsylvania Human Relations Act; and the Philadelphia Fair Practices Ordinance. The City moved for summary judgment on all claims. The District Court granted summary judgment on all claims except for Pierce's race

3

discrimination and retaliation claims under Title VII, the Pennsylvania Human Relations Act, and the Philadelphia Fair Practices Ordinance.

The case then proceeded to trial. A jury found in favor of the City on the race-discrimination claim but in favor of Pierce on the retaliation claim. The jury awarded Pierce nominal damages for her retaliation claim.

Pierce filed several post-trial motions requesting: (1) judgment as a matter of law under Rule 50, (2) a new trial under Rule 59, (3) relief from judgment under Rule 60, (4) recusal of the District Court judge, and (5) equitable relief. The District Court denied these motions. Pierce timely appealed.[1]

**II**[2]

On appeal, Pierce challenges the District Court's denial of her post-trial motions. Because her arguments all lack merit, we will affirm the District Court.

---

[1] Pierce also appealed the District Court's denial of her motion for partial summary judgment. But she later withdrew that portion of her appeal. *See* Appellant's Reply Br. at 1 n.1.

[2] The District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1367. We have jurisdiction under 28 U.S.C. § 1291. We review de novo an order denying judgment as a matter of law under Rule 50. *LePage's Inc. v. 3M*, 324 F.3d 141, 145 (3d Cir. 2003) (en banc) (citation omitted). We review the District Court's denial of Pierce's remaining motions for abuse of discretion. *See Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (citation omitted) (Rule 59); *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008) (citation omitted) (Rule 60); *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000) (citation omitted) (motion for recusal); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citation omitted) (motion for equitable relief).

## A

Pierce argues that she is entitled to judgment as a matter of law on her race-discrimination claim because race was undisputedly a motivating factor in the City's decision not to promote her. We disagree.

A district court may enter judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50(a)(1). On appeal, we apply the same standard as the District Court. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). Thus, we "must draw all reasonable inferences in favor of the nonmoving party, and . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). We will overturn the verdict only when "there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube*, 4 F.3d at 1166.

At trial, Pierce had to show—through direct or circumstantial evidence—that race was a motivating or determinative factor when the City decided not to promote her. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016).

But the jury had enough evidence to conclude that race was not a factor in the City's decision. Carney testified that race played no role in her hiring decisions. She also testified that she was not pressured into promoting Hispanics and did not consider letters of recommendation from politicians. Other members of the hiring panel corroborated Carney's testimony that race played no role in the decision to promote Albandoz instead

5

of Pierce. *See, e.g.*, App. 1143–44 (Michael Resnick); S. App. 231 (Tracy Delaney); S. App. 457 (Terrell Bagby). Pierce admitted that she "didn't do well" in the interview because she was feeling ill. App. 1173. At the same time, the hiring panel concluded that Albandoz interviewed well. Based on the candidates' performance during the interview, the hiring panel unanimously recommended Albandoz for the promotion.

Drawing all inferences in the City's favor, we are satisfied that the jury's verdict was supported by a legally sufficient evidentiary basis. The jury was instructed to weigh the evidence and make credibility determinations. We presume that the jury followed these instructions. *See Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (citations omitted). "[T]he verdict indicates that the jury did not credit [Pierce's witnesses]. Because the evidence supports that verdict, we will not second guess that decision." *United States v. Wert-Ruiz*, 228 F.3d 250, 258 (3d Cir. 2000). Thus, Pierce is not entitled to judgment as a matter of law.

Pierce's arguments to the contrary are unpersuasive. First, she maintains that City officials admitted that the City has a policy of considering race in hiring decisions. And second, Pierce argues that race indisputably played a role in the hiring decision when Carney received letters of recommendation on behalf of Albandoz from elected City officials. But, as explained, the jury had enough evidence to conclude otherwise.

**B**

Next, Pierce argues that the District Court abused its discretion when it denied her motion for a new trial. We disagree.

6

A district court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). "The authority to grant a new trial resides in the exercise of sound discretion by the [district] court[.]" *Wagner ex rel. Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995) (citation omitted). A district court should grant a new trial only when "the jury's verdict resulted in a miscarriage of justice" or "shocks [the] conscience." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 366 (3d Cir. 1999) (citation omitted).

**1**

First, Pierce contends that she was entitled to a new trial because the verdict was against the great weight of evidence. Her argument rings hollow.

Our conclusion that Pierce is not entitled to judgment as a matter of law does not automatically preclude relief under Rule 59(a). *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735 (3d Cir. 1988) ("We . . . are cognizant of the precept that a new trial may be granted even when judgment [as a matter of law] is inappropriate."). But to show that the verdict was against the great weight of evidence, Pierce must demonstrate that "(1) the jury reached an unreasonable result, and (2) the District Court abused its broad discretion in not setting the verdict aside." *Leonard*, 834 F.3d at 386. Pierce incorporates her previous arguments, which we have already rejected. This time, however, she relies on the testimony of Robert Tomaszewski. Tomaszewski testified that he had a conversation with Carney during which Carney admitted that she was feeling pressure to promote Hispanics. Pierce testified that Tomaszewski told her of this conversation. But Carney

7

denied telling Tomaszewski that she was being pressured to hire a Hispanic to the HSPA position. And the jury's decision to apparently believe Carney over Tomaszewski and Pierce is not a basis for a new trial.

In sum, having surveyed the trial evidence, we are not convinced that the jury reached an unreasonable conclusion. Thus, the District Court did not abuse its discretion.

**2**

Second, Pierce maintains that she was entitled to a new trial because the City's counsel improperly implied during closing argument that no discrimination occurred because Mayor Kenney was not called to testify.[3] This argument fails.

To show that the statements about Mayor Kenney justify a new trial, Pierce must show that it was "'reasonably probable' that the verdict was influenced by [these] prejudicial statements." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3d Cir. 1992) (quoting *Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir. 1978)).

During closing arguments, the City's counsel suggested to the jury that no discrimination occurred because "if the mayor had decided he wanted to promote . . . Albandoz because she's Hispanic, we would've had him on the stand." App. 1398. But Mayor Kenny was not called to testify. Pierce's counsel objected to these comments, and the District Court immediately issued a curative instruction.

---

[3] Pierce also argues that the City's counsel made improper comments by (1) offering her personal opinion as an African American and (2) attacking Pierce's counsel. But Pierce withdrew these objections at trial, so they are waived. *See United States v. Tai*, 750 F.3d 309, 313 n.10 (3d Cir. 2014) ("[W]ithdrawing an objection constitutes a waiver of the right to appellate review in most instances.").

8

Given the curative instruction, we do not believe that it was "reasonably probable" that the jury was prejudiced by the comment. Mayor Kenney's role was not a "prominent 'theme' throughout the trial, and thus even if improper, th[is] isolated reference[] do[es] not constitute 'argument injecting prejudicial extraneous evidence.'" *Leonard*, 834 F.3d at 399 (quoting *Fineman*, 980 F.2d at 209–10).

**3**

Third, Pierce asserts that she was entitled to a new trial because the jury charge and verdict form (collectively, "the charge") required the jury to find that Pierce's race— "her race"—was a motivating or determinative factor in the City's decision. She contends that the charge should have said "her race (non-Hispanic)" or "race." She is incorrect.

We must decide "whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." *United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984). But even if the charge is flawed, we will not reverse if "it is highly probable that the error did not contribute to the judgment, *i.e.*, whe[n] the challenged error was harmless." *Murray v. United of Omaha Life Ins. Co.*, 145 F.3d 143, 156 (3d Cir.1998) (internal quotation marks and citation omitted).

The contested portion of the charge explained that, in order to find for Pierce on her discrimination claim, the jurors would have to conclude that "her race" was a motivating or determinative factor in the City's decision not to promote Pierce.

The charge "'fairly and adequately' submit[ted] the [discrimination] issue to the jury." *See Fischbach & Moore*, 750 F.2d at 1196. Pierce's theory of the case was that the

9

City had a discriminatory policy, that the policy favored Hispanics over Native Americans, and that the policy was a factor in the City's decision to promote Albandoz over Pierce. So the jury had to decide whether Pierce did not receive the promotion because she belonged to an allegedly disfavored race. If the jury believed that the City promoted Albandoz because it discriminated in favor of Hispanics, the jury would have necessarily concluded that the City discriminated against Pierce because of *her race*. Pierce fails to show that her instructions convey a different legal meaning rather than a preferred point of emphasis.[4]

Even if the charge were flawed, any error was harmless. *Murray*, 145 F.3d at 156. Pierce did not perform well during her interview. And every member of the hiring panel who testified stated that race played no role in the decision to not promote Pierce. Although Tomaszewski contradicted the testimony of the City officials, a differently phrased charge would not have affected the jury's decision to apparently credit the City's witnesses. Thus, the outcome would have been the same.

## C

Next, Pierce argues that the District Court abused its discretion when it refused to grant relief from judgment for alleged discovery misconduct by the City. She contends that the City committed misconduct when it withheld documents during discovery and

---

[4] The District Court could have used Pierce's preferred formulations of the charge, but it was not required to do so. *See Douglas v. Owens*, 50 F.3d 1226, 1233 (3d Cir. 1995) ("No litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its own preference.").

that this misconduct prevented her from fully and fairly presenting her case at trial. We disagree.

A district court "may relieve a party . . . from a final judgment" when there has been "fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b). To prevail, Pierce must show "that the [City] engaged in fraud or other misconduct, and that this conduct prevented [her] from fully and fairly presenting [her] case." *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983). Relief may be warranted so long as the evidence "would have made a difference" in advancing Pierce's claim. *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1202 (3d Cir. 1989) (internal quotation mark and citation omitted).

Pierce presents two theories to explain why the documents would have advanced her case. But we are not persuaded that the alleged misconduct prevented Pierce from fully and fairly presenting her case.

First, Pierce contends that, prior to the discovery of the new documents, she did not know that the City had an "explicit objective to hire individuals because of race." Appellant Br. 30; *id.* at 30–32 (identifying newly discovered emails). But at the close of discovery, Pierce knew that the City had a diversity initiative with an explicit objective of "creat[ing] a workforce that reflects the racial demographics of the [C]ity." App. 124 (Pierce's motion for partial summary judgment). Pierce also received many documents during discovery that were probative of the City's diversity initiative. She deposed multiple PDP officials who admitted that the diversity initiative existed and that Mayor

11

Kenney instructed them to implement the initiative. Because Pierce knew about the City's diversity initiative at the close of discovery, this argument fails.

Second, Pierce argues that she did not know that Native Americans "w[ere] not included in the race-based percentage goals" until discovering the withheld documents. Appellant Br. 35. But again, the City produced many documents pertaining to the City's efforts to implement its diversity initiative. These documents included explicit goals for increasing the representation of minorities including African Americans, Hispanics, and Asians—but not Native Americans. Because Pierce was on notice of these numerical goals, this argument also fails.

**D**

Next, Pierce argues that the District Court abused its discretion when it denied her motion for recusal. We disagree.

A federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Recusal is almost never warranted unless there is some evidence of "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). That kind of "deep-seated favoritism or antagonism" cannot be "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration[.]" *Id.* at 556.

The District Court believed that Pierce's counsel made an inappropriate argument during her closing argument. At a sidebar discussion when the jury was absent, the District Court expressed dissatisfaction with Pierce's counsel. And later, in a

12

memorandum opinion denying Pierce's post-trial motions, the District Court said that Pierce's counsel "crossed the line separating zealous advocacy from improper argument" because the argument lacked a "basis in the evidence at trial" and "counsel knew from the underlying discovery [that it was] false." App. 72.

These statements by the District Court do not warrant recusal. The District Court's "expressions of impatience, dissatisfaction, annoyance, [or] even anger . . . are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Liteky*, 510 U.S. at 555–56.[5]

### E

Finally, Pierce argues that the District Court abused its discretion by denying her motion for equitable relief. We disagree.

Under Title VII, if a "court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice . . . the court may enjoin the respondent from engaging in such unlawful employment practice" and may order "any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). A court's exercise of this "broad equitable discretion," *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976), is guided by "the statute's central goals of make-whole relief and deterrence," *Squires v. Bonser*, 54 F.3d 168, 171 (3d Cir. 1995).

---

[5] In addition to asking us to reverse the District Court, Pierce asks us to order recusal under 28 U.S.C. § 2106. *See* Appellant Br. 48 n.12. For the reasons explained, we will deny this request.

After prevailing on her retaliation claim, Pierce sought several forms of equitable relief. She requested (1) an order maintaining her current staff and office at the Philadelphia Industrial Correctional Center; and (2) a permanent injunction prohibiting the City from retaliating against her.[6]

The District Court denied Pierce's request to maintain her current staff, office and parking spot because (1) the nominal damages award demonstrated that Pierce did not suffer any actual injury, and (2) "it would be inappropriate for the Court to 'revamp the PDP social work organizational structure.'" App. 85.

The District Court also denied Pierce's request for a permanent injunction. To be entitled to injunctive relief, Pierce must show—among other things—"that remedies available at law, such as monetary damages, are inadequate to compensate for [her] injury." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010) (citation omitted). The District Court reasoned that "[t]he jury's award of nominal damages does not indicate that damages would have been an inadequate form of relief; rather, it demonstrates the jurors' views that Pierce suffered no compensable injury at all." App. 86. Moreover, we agree with the District Court that a recurrent injury is "speculative" since Pierce now reports to a new supervisor. App. 87. And an injunction to merely obey the law is the type of "[b]road, non-specific language" that we have discouraged. *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994).

---

[6] Pierce also requested a transfer to a new supervisor. But she concedes that this request is moot because she reports to a new supervisor. *See* Appellant Br. 50 n.13.

We are convinced that the District Court acted well within its "broad equitable discretion" in declining to award equitable relief here. *Franks*, 424 U.S. at 763.

\* \* \*

For all these reasons, we will affirm the District Court's orders denying post-trial relief.