In re ENRON CORP., et al.,
Reorganized Debtors.

Enron Corp., Plaintiff,

v.

J.P. Morgan Securities Inc.,
et al., Defendants.

Bankruptcy No. 01–16034 (AJG).
Adversary No. 03–92677.

United States Bankruptcy Court,
S.D. New York.

Dec. 13, 2006.

Richard L. Wasserman, Esq., Michael Schatzow, Esq., Robert L. Wilkins, Esq., Venable LLP, of Counsel, Baltimore, MD, Special Litigation Counsel for the Reorganized Debtors.

Albert Togut, Esq., Frank A. Oswald, Esq., Scott E. Ratner, Esq., Togut, Segal & Segal LLP, of Counsel, New York, NY, for the Reorganized Debtors.

Jeffrey A. Rosenthal, Esq., Boaz A. Weinstein, Esq., Cleary Gottlieb Steen & Hamilton LLP, of Counsel, New York, NY, for Lehman Commercial Paper Inc. and Lehman Brothers Japan, Inc.

OPINION DENYING ENRON'S RE-QUEST FOR RELIEF PURSUANT TO BANKRUPTCY RULE 9023 RE-GARDING OPINION DENYING MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD LEHMAN BROTHERS JAPAN, INC.

ARTHUR J. GONZALEZ, Bankruptcy Judge.

### Facts

Enron Corp. ("Enron") has filed a Motion for Reargument of Court's Denial of Motion for Leave to Amend Complaint to Add Lehman Brothers Japan, Inc. ("Leh-

man Japan")(the "Motion for Reargument"), pursuant to the Federal Rules of Bankruptcy Procedure 9023 ("Rule 9023"), requesting the Court's permission to reargue certain issues regarding the relation-back of Lehman Japan as a defendant to Enron's first amended complaint under Rule 15(c)(3) of the Federal Rules of Civil Procedure ("Rule 15(c)(3)"). In the Motion for Reargument, Enron requests the Court reconsider the opinion issued on May 2, 2006 (the "Rule 15(c)(3) Opinion"),[1] denying Enron's Motion for Leave to Amend its Complaint (the "Motion for Leave to Amend"). In the Rule 15(c)(3) Opinion, the Court concluded that Enron did not establish that its failure to name Lehman Japan as a defendant was a mistake under Rule 15(c)(3). The Court heard argument on July 27, 2006 (the "July 27 Hearing") as to whether to grant relief under Rule 9023 regarding the Rule 15(c)(3) Opinion.

Enron filed the Motion for Leave to Amend on October 19, 2005 and a hearing was held on December 15, 2005 (the "December 15 Hearing"). On January 26, 2006, Enron filed a motion to supplement the Motion for Leave to Amend on January 26,2006 (the "Motion to Supplement"). In the Motion for Leave to Amend and memorandum of law in support of that motion and the Motion to Supplement (collectively, the "Initial Pleadings"), Enron sought to (1) correct the names of 16 defendants in Enron's first amended complaint, and (2) add 25 new defendants, including Lehman Japan, in its second amended complaint. Nine objections to the Motion for Leave to Amend were filed.[2]

In the Initial Pleadings, citing *Randall's Island Family Golf Ctr. v. Acushnet Co. (In re Randall's Island)*, No. 02–2278, 2002 WL 31496229 (Bankr.S.D.N.Y. Nov.8, 2002) and *Byrd v. Abate*, 964 F.Supp. 140 (S.D.N.Y.1997), Enron argued that Rule 15(c)(3) relief should be granted because it did not know the "identity" of those new defendants and, therefore, its failure to add the 24 new defendants, including Lehman Japan, was not a strategic decision. Enron alleged that certain defendants, such as Goldman, Sachs & Co. and J.P. Morgan Securities Inc., made efforts to prevent it from identifying some of the new defendants who were the transferees or beneficiaries of certain commercial paper transactions of Enron. However, Enron did not allege any conduct by Lehman Brothers Commercial Paper ("Lehman") that prevented it from identifying Lehman Japan.

In its reply brief to all objecting defendants ("Enron's Reply"), Enron for the first time alleged facts to establish that Lehman's actions constituted concealment under *Byrd*, including a misrepresentation in a letter dated November 25, 2003 (the "November 25 Letter").[3] The misrepre-

---

1. Unless otherwise stated, all references to the Court's previous conclusions are to those rendered in the Rule 15(c)(3) Opinion.

2. Lehman, Lehman Japan, Far East National Bank, EarthLink, Inc., AIM Floating Rate Fund and INVESCO Institutional (N.A.), Inc., Shizuoka Bank, Ltd. and Shizugin TM Securities, Co., Ltd., Mitsubishi Trust and Banking Corporation and Merrill Lynch Tanchuki Bond Open Mother Fund and Merrill Lynch Tan–Chuki–Sai Fund, Merrill Lynch Investment Managers, L.P. ("Merrill") and Merrill

Lynch Investment Managers Co., Ltd., and Bertholon Rowland, Inc. each filed an objection.

3. In the November 25 Letter, Jeffrey Rosenthal on behalf of Lehman wrote the following to Enron

... the disclosure obligations of [Lehman] pursuant to [the November 18 Order] have been fulfilled by our prior production of documents bearing bates numbers LCPI 00001–00055. As the result, *we understand that all entities disclosed by us have already*

sentation alleged by Enron in the November 25 Letter was that "... we [Lehman] understand that all entities disclosed by us [Lehman] have already been named as defendants in this action...." ("Lehman's Statement").

At the December 15 Hearing, Enron further elaborated its allegation in Enron's Reply and argued that Lehman engaged in a *Byrd*-type "concealment" that prevented it from knowing the identity of Lehman Japan, even though Lehman provided trade confirmations revealing certain information regarding Lehman Japan [4] before the commencement of the commercial paper adversary proceeding. In that regard, Lehman's acts of concealment included (1) its refusal to provide Enron more information on an informal basis than in the trade confirmations, and (2) its misrepresentation (Lehman's Statement) in the November 25 Letter. Enron raised the misrepresentation issue based upon *Byrd*. Simply, Enron argued that Lehman's Statement

attributed to its "lack of knowledge" that resulted in a "mistake" under Rule 15(c)(3). In another words, Enron argued that Lehman's Statement constituted concealment under *Byrd* because it prevented Enron from identifying Lehman Japan as a defendant within the statute of limitations. It did not raise any other legal theory to support the relief sought based upon Lehman's Statement other than its arguments under *Byrd*.

In response to Enron's concealment argument, Lehman and Lehman Japan maintained that the *Byrd* case was not controlling. Even if the Court considered that case, they asserted that they did not engage in an active concealment and Lehman's Statement did not represent that all of the defendants "had" been named. Rather, they asserted that Lehman's Statement represented that they "thought" all the entities on the trade confirmations had been named already but welcomed any questions from Enron.[5] They argued that

been named as defendants in this action, which was the sole purpose for your motion according to representations you made to the Court.
...
Please note that [Lehman] also reserves its right to supplement or amend its prior production should different or additional information become known to it.
Please do not hesitate to contact me should you have any questions or comments.
Declaration of Robert L. Wilkins, Exhibit D, *Enron v. J.P. Morgan Securities Inc., et al.* Adv. Pro. No. 03–92677 (Docket No. 319) (March 30, 2004)(emphasis added).

4. The trade confirmations revealed the names of the principal, issuer and beneficiary, and the dates, amount and terms of the commercial paper transactions. No allegation has been made related to the accuracy of information appearing on those trade confirmations. The information related to Lehman Japan with the Initials LBJ included as follows
LBJ FOR MITSUBISHI TB
 FOR MERRILL LYNCH INV MGRS
 ARK MORI BUILDING 36TH FLOOR

1-12-32 AKASAKA MINATO–KU
TOKYO 107–6036 JAPAN
Declaration of Boaz A. Weinstein, Exhibits A and B, *Enron v. J.P. Morgan Securities Inc., et al.*, No. 03–92677 (Docket No. 1044) (December 1, 2005).

5. At the December 15 Hearing, counsel, for Lehman and Lehman Japan, Mr. Weinstein argued as follows

First, in October of 2003 Lehman voluntarily agreed to engage in discovery with Enron pursuant to which it produced its trading confirms. Those trading confirms identified LBJ. So this is a far cry right at the outset from the facts in *Byrd* where you had delaying and dilatory tactics by opposing counsel trying to conceal the identity of a Defendant. In October, as Mr. Wilkins stated, they did come to LCPI [Lehman] asking for the names and addresses of customers and at that time Lehman felt that it could not give those over without violating the proprietary and fiduciary rights and agreements it had with its customers ... [.] LCPI responded to [motion for initial disclosures]

even if Lehman's Statement could be construed as a misrepresentation, Enron's reliance on that statement in not making further inquiry regarding the Initials LBJ was not reasonable. The Court then questioned Lehman's counsel about their conduct after they realized that Lehman's Statement was inaccurate. In response, counsel stated that they did not realize that its representation was inaccurate until after Enron named Lehman Japan as a defendant and, by then, they did not feel the need to provide Enron further information since Enron already had the relevant information through the trade confirmations. Following the exchange between the Court and Lehman's counsel, the Court asked Enron's counsel if they had anything further to add. In response, Enron's counsel stated that "Your Honor asked very good questions about what the letter meant, and I don't think that I need to really touch on that any further." Transcript of Oral Argument at 98, *Enron v. J.P. Morgan Securities Inc., et al.,* Adv. Pro. No. 03–92677 (December 15, 2005). Enron's counsel, at no time prior to the issuance of the Rule 15(c)(3) Opinion, sought relief to further respond to any issue raised by the above exchange with Lehman.

In the Rule 15(c)(3) Opinion, first, the Court primarily examined the issue as to whether Enron had sufficient information to name Lehman Japan as a defendant under the Second Circuit's controlling precedent. *See Cornwell v. Robinson,* 23 F.3d 694, 705 (2d Cir.1994); *see also Barrow v. Wethersfield Police Dept.,* 66 F.3d 466 (2d Cir.1996). The Court concluded

and said we have given you the trading confirms already. We think that there is no one else to name, but if you have any questions, let us know. *Now, interestingly they try and say that we misrepresented and tried to mislead them somehow with this statement* ... [.] it is not a representation that, in fact, all of the Defendants have been named, but even if you were to construe it that way, it is clear that *their reliance wouldn't be reasonable.* As Enron stated in its papers, they knew that they saw LBJ on the trading confirms and they just did not name them as a defendant because they said they didn't have enough contextual information. Well, if they knew that they needed more contextual information about LBJ, when we said, "Please let us know if you have any questions or concerns," they should have come back to Lehman and said, in fact, we need this information. Instead, *months went by and the statute of limitations had passed and they never came* to Lehman or LPCI with this request. So this is clearly not a case where Lehman was seeking to actively conceal identity. Lehman did not make a representation and, in fact, Enron was the party that had the knowledge of what information it needed and did not diligently seek to get [the information].
...

Judge Gonzalez: So at that point in time you believed that Enron had named all of the Defendants?
Mr. Weinstein: That is correct, Your Honor.
...
Judge Gonzalez: Were you under any obligation to advise them that your initial disclosures would then need to be modified?
Mr. Weinstein: I think, Your Honor, we took the position that our initial disclosures were satisfied by the trading confirms that we had produced, and the trading confirms did, in fact, list LBJ on two separate confirms.
...
Judge Gonzalez: ... When it appeared to you that they didn't name everyone, did you believe that you were under any obligation to advise them of that?
...
Mr. Weinstein: I believe, Your Honor, when we learned from Enron that, in fact, LBJ had been named, there seemed to be no purpose to then saying to Enron that LBJ was, in fact, involved somehow in this transfer since they were already in possession of that information.
Transcript of Oral Argument at 86–92, *Enron v. J.P. Morgan Securities Inc., et al.,* Adv. Pro. No. 03–92677 (December 15, 2005)(emphasis added).

that Enron had sufficient information to name the Initials LBJ as a defendant. Further, the Court found that the missing "contextual information" did not prevent Enron from naming timely Lehman Japan as a defendant by using the Initials LBJ. Hence, the Court concluded that the omission of Lehman Japan in Enron's first amended complaint was simply a failure by Enron to use the information available to name a defendant or avail itself of the opportunity to obtain additional information and, therefore, such omission was not the result of a Rule 15(c)(3) mistake under *Cornwell* and *Barrow.*

Second, for sake of completeness, the Court addressed Enron's concealment argument under *Byrd.* After considering Enron's arguments in the Initial Pleadings, Enron's Reply, and at the December 15 Hearing (collectively, "Enron's Submissions"), the Court found that the relief was not warranted on the grounds that (1) because Lehman provided Enron sufficient information to name Lehman Japan by using the initials LBJ (the "Initials LBJ") as a defendant, Enron failed to satisfy the *Byrd* test that requires defense counsel must repeatedly refuse to cooperate by not providing any information about a new defendant, and (2) Enron should and could have taken necessary steps to seek information to properly and identify timely Lehman Japan in order to satisfy the *Byrd* test that requires the information must be repeatedly requested by plaintiff's counsel. The Court discussed certain issues related to Lehman's Statement in the context of

the concealment analysis under *Byrd;* however, Enron's reliance on Lehman's Statement and the reasonableness of such reliance were not discussed.

In the Motion for Reargument and at the July 27 Hearing, Enron argues that the Court should reconsider its findings in the Rule 15(c)(3) Opinion because the Court overlooked a material fact-the misrepresentation (Lehman's Statement) made by Lehman in the November 25 Letter[6]—that warrants relief under Rule 9023. Enron contends that the Court's failure to consider the issues related to Lehman's Statement affected directly its analysis in the Rule 15(c)(3) Opinion. Specifically, Enron argues that in the concealment analysis, the Court focused on steps that Enron could have taken to discover what the Initials LBJ stood for, and that it could have named Lehman Japan as a defendant by using the Initials LBJ within the statute of limitations. Enron argues that the Court's focus on what it could have done was misplaced since it relied on Lehman's Statement and did not take any action regarding the Initials LBJ after receiving the November 25 Letter. The other arguments (collectively, the "New Arguments") raised by Enron include that (1) the November 25 Letter was part of Lehman's court-ordered initial disclosures under the Federal Rules of Civil Procedure 26(a)(1)(A)("Rule 26(a)(1)(A)"), constituting a "functional equivalent of a court-ordered interrogatory," (2) Enron had an absolute right to rely on Lehman's Statement in the November 25 Letter—an

6. In Enron Corp.'s Reply Memorandum in Support of Motion for Reargument of Court's Denial of Motion for Leave to Amend Complaint to Add Lehman Brothers Japan, Inc., Lehman and Lehman Japan collectively are defined as "Lehman." It is unclear whether the term "Lehman's misrepresentation." in that motion, discussed in the reply and defined by the Court herein as Lehman's Statement, is alleged by Enron to be attributable to Lehman and Lehman Japan or solely Lehman. However, the November 18 Order directed Lehman, not Lehman Japan, to respond. Further, there is no evidence that that letter was sent on anyone's behalf, other than Lehman. Therefore, the November 25 Letter is only attributable to Lehman.

equivalent of an interrogatory, (3) Lehman violated the Federal Rules of Civil Procedure 26(g) ("Rule 26(g)") because Lehman made a false statement in that letter as a result of not making a reasonable inquiry, (4) Lehman intended that Lehman Japan and the Initials LBJ not be named when Lehman believed that it had no duty to disclose either entity, and (5) supported by *Chalick v. Cooper Hosp./Univ.Med.Ct.,* 192 F.R.D. 145, 153 (D.N.J.2000), pursuant to Federal Rules of Civil Procedure Rule 37 ("Rule 37"), a sanction of allowing Lehman Japan to be related back to Enron's first amended complaint is warranted due to Lehman's Rule 26(a)(1)(A) violation, and the doctrine of the "identity of interest" between Lehman and Lehman Japan permits the Court to impose a relation-back sanction on Lehman Japan for Lehman's Statement. In addition, Enron acknowledges that it had sufficient information regarding the Initials LBJ on the trade confirmations, but argues that because of Lehman's concealment, it did not have the information necessary to corroborate that the Initials LBJ should be named as a defendant. Lastly, Enron asserts that Lehman and Lehman Japan should not be permitted to profit from Lehman's Statement because allowing them to do so would result in manifest injustice. Based upon the above arguments, Enron concludes, among other things, that it did not make a choice not to name Lehman Japan and, therefore, the relief it sought should have been granted.

In response to Enron's arguments, Lehman and Lehman Japan argue that Enron's concealment argument was irrelevant because the Court was correct in finding that Enron had failed to establish a Rule 15(c)(3) mistake test under *Cornwell* and *Barrow*. Even if it were relevant, they counter that (1) Enron fails to qualify for reconsideration because the Court already considered the November 25 Letter, and

(2) none of its current substantive arguments are even allowed to be considered under Rule 9023 because they were not raised timely. Additionally, they argue that even if the Court had failed to consider the alleged misrepresentation in the November 25 Letter, the Court's ruling would not have been altered because *Cornwell* and *Barrow* would not warrant relief under Rule 15(c)(3). Finally, they contend that Enron's manifest injustice argument fails because it neither cited any case law to define the doctrine of manifest injustice nor explained how that doctrine applies to the instant matter. According to their contention, a finding of manifest injustice is not warranted in this case where Lehman provided Enron trade confirmations, within which Lehman Japan—by the Initials LBJ—and its involvement in the alleged transactions were identified.

In response, Enron argues that it was Lehman and Lehman Japan who introduced the issue of Enron's justifiable reliance on Lehman's Statement for the first time at the December 15 Hearing. Accordingly, Enron argues that it is entitled to respond to that issue in the Motion for Reargument.

## Discussion

■■■ The granting of a motion to alter or amend an order under Rule 9023, which incorporates Rule 59(e) of the Federal Rules of Civil Procedure, "is merited when there has been a clear error or manifest injustice in an order of the court or if newly discovered evidence is unearthed." *In re Bird,* 222 B.R. 229, 235 (Bankr. S.D.N.Y.1998); *see also Griffin Indus., Inc. v. Petrojam, Ltd.,* 72 F.Supp.2d 365, 368 (S.D.N.Y.1999)(citing *Robins v. Max Mara, U.S.A., Inc.,* 923 F.Supp. 460, 472 (S.D.N.Y.1996)). The burden is on the movant to show that factual matters or controlling precedent were overlooked that

could have materially influenced the earlier decision. *See Cioce v. County of Westchester,* 128 Fed.Appx. 181, 185 (2d Cir. 2005); *see also Griffin,* 72 F.Supp.2d at 368 (citing *Fruit of the Loom, Inc. v. American Mktg. Enters. Inc.,* No. 97–3510, 1999 WL 527989, at *1, 1999 U.S. Dist. LEXIS 11060, at *1 (S.D.N.Y. July 22, 1999)); *Bird,* 222 B.R. at 235. "This criterion is strictly construed against the moving party." *Bird,* 222 B.R. at 235 (citations omitted). Importantly, a "motion to reconsider should not give the moving party another bite at the apple by permitting argument on issues that could have been or should have been raised prior to the original motion." *Id.* at 235; *see also Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998); *Griffin,* 72 F.Supp.2d at 368.

In this opinion, the Court will discuss three issues (i) whether the Court overlooked facts that would have materially influenced the analysis in the Rule 15(c)(3) Opinion, (ii) whether the New Arguments, either in support of Enron's concealment argument under *Byrd* or as separate bases for relief, were raised timely, and (iii) whether a finding of manifest injustice is warranted.

## I.

Enron contends that the Court in the Rule 15(c)(3) Opinion overlooked Lehman's Statement, which was a material fact that demonstrated Lehman's concealment under *Byrd.* In this section, the Court will examine Enron's arguments raised in Enron's Submissions and in the instant proceeding to determine whether it overlooked a fact that would have materially influenced the analysis in the Rule 15(c)(3) Opinion.

(a) Lehman's Statement in the Rule 15(c)(3) Opinion

In the Rule 15(c)(3) Opinion, the Court did not discuss the issues related to Enron's reliance on Lehman's Statement and the reasonableness of such reliance. There are three reasons for that (1) those issues were neither well-developed nor fully articulated in Enron's Submissions, (2) Enron failed to establish that it made a Rule 15(c)(3) mistake under the controlling Second Circuit precedent in *Cornwell* and *Barrow,* and (3) even if Enron's *Byrd* concealment argument were established, it would not have relieved Enron from the obligation under *Byrd* to continue to seek additional information regarding the Initials LBJ, if Enron determined that such information was necessary.

(1) In the Initial Pleadings, Enron did not allege any actions by Lehman that prevented it from identifying Lehman Japan. In fact, it neither made any reference to a misrepresentation nor alleged any conduct on Lehman's part.[7] In its objection to the Motion for Leave to Amend, Lehman argued that Enron did not satisfy a Rule 15(c)(3) mistake under *Cornwell, Barrow,* and *Byrd.* In particular, Lehman asserted that Enron did not establish a basis for relief under *Byrd* because Lehman did not deliberately thwart Enron's efforts to learn the identity of the Initials LBJ; rather, it provided Enron sufficient information. In response to Lehman's objection, Enron alleged for the first time in Enron's Reply that Lehman's actions, including Lehman's Statement, stonewalled Enron from discovering the identity of the Initials LBJ; as a result, its diligent efforts to obtain information under *Byrd* were thwarted. Further, at the De-

---

**7.** *See* Memorandum of Law in Support of Motion of Enron Corp. for Leave to Amend its Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure, *Enron v. J.P. Morgan Securities Inc., et al.* Adv. Pro. No. 03–92677 (Docket No. 1000) (October 19, 2005).

cember 15 Hearing, Enron argued specifically that Lehman engaged in concealment under *Byrd*, as evidenced by Lehman's Statement and, therefore, Enron did not have enough information to name Lehman Japan timely. With respect to the issue of misrepresentation, Enron did not seek relief based upon any legal theory independent of *Byrd*. *See* discussion *infra* Part II. Thus, as further discussed below, the Court considered Lehman's Statement solely in the context of Enron's concealment argument under *Byrd*.

■ Insofar as Enron argued that Lehman concealed relevant facts that led it not to take certain actions, the issues as to Enron's reliance and the reasonableness of that reliance were before the Court. It is well-settled that in order to recover for concealment, the reliance on a misrepresentation must be justifiable or reasonable. *See Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*, 245 A.D.2d 96, 98–99, 665 N.Y.S.2d 415 (1st Dept.1997). To succeed in the argument regarding detrimental reliance, Enron must establish that its reliance was justifiable or reasonable. At the December 15 Hearing, the Court focused upon Lehman's Statement, among other things, by questioning of Lehman's counsel. *See supra* note 5 and accompanying text. After the Court's inquiries of Lehman's counsel, Enron neither responded to Lehman's challenge as to the reasonableness of its reliance nor raised additional arguments in order to supplement its reliance argument regarding Lehman's Statement. Further, Enron did not preserve any right to do so. The issues related to Enron's reliance and the reasonableness of it were neither developed nor fully articulated in any of Enron's Submissions. *See* discussion *infra* Part II.

(2) The Court focused on primarily the issue whether Enron made a Rule 15(c)(3) mistake that would justify the relation-back of Lehman Japan to its first amended complaint. To determine the issue, the Court examined the information disclosed to Enron in the trade confirmations regarding the Initials LBJ. In addition, the Court examined the fact that Enron named a number of defendants by using the initials, either an entity or an account name. The Court then concluded that Enron had sufficient information to name Lehman Japan as a defendant by using the Initials LBJ, and therefore, its failure to use such information or avail itself of the opportunity to obtain additional information, if deemed necessary, was not the result of a Rule 15(c)(3) mistake under *Cornwell*. Additionally, the Court found that Enron did not satisfy the "mistake" requirement under *Barrow* because adding Lehman Japan was not to correct a mistake, but to correct a lack of knowledge (". . . the failure to identify the new defendant cannot be characterized as a mistake when a plaintiff knew that such defendant must be named at the time of the original complaint, even though the plaintiff was barred from naming it due to lack of the knowledge of its identity.").

Once the Court made such determinations, Enron's concealment argument, even if found to be credible, became irrelevant (finding that "[e]ven if concealment were established, it would not warrant relief under Rule 15(c)(3) because such concealment would not have prevented Enron from timely naming Lehman Japan"). This was because Enron knew the Initials LBJ (although it did not know that these initials stood for Lehman Japan) must be named as a defendant, like other similarly situated defendants named by using the initials on the trade confirmations, after Lehman disclosed related information to it. Enron's failure to name the Initials LBJ cannot be characterized as a mistake under *Barrow*, and instead was considered a

choice under *Cornwell* because no mistake in identity under Rule 15(c)(3), such as "misnomer or misidentification," was found. Further, because Enron had such sufficient information, the *Byrd* case did not apply for two reasons. First, the *Byrd* court distinguished *Barrow* in that, despite the *Byrd* plaintiff's requests, it did not receive any information about added defendants; whereas the *Barrow* plaintiff knew added defendants must be named. *See Barrow*, 66 F.3d at 470; *see also Byrd*, 964 F.Supp. at 145–46. The facts supporting a finding that relief under *Cornwell* and *Barrow* was not warranted also served to establish that part of the *Byrd* test which requires a showing of the diligent efforts of plaintiff's counsel despite a complete lack of cooperation by defendant's counsel. *See Byrd*, 964 F.Supp. at 145–46. As opposed to the lack of cooperation by *Byrd* defendants' counsel, Lehman produced documents to Enron. Enron used information contained in those documents as its primary source for naming defendants. Although the Court noted that the *Byrd* court held that a Rule 15(c)(3) mistake was established in the absence of discussing the satisfaction of the "misnomer or misidentification" requirement, it found because Enron had sufficient information to name Lehman Japan by using the Initials LBJ as a defendant, the *Byrd* distinction was not pertinent. Second, the concealment, as alleged by Enron, simply did not prevent Enron from using the information it had, or, excuse it from making further inquiry to resolve any uncertainty regarding the Initials LBJ. As further explained below, the argument that the use of the word of "understood" in Lehman's Statement could be relied upon by Enron not to make further inquiry was not credible. Apart from the concealment under *Byrd*, Enron did not present any other basis for relief that would satisfy the standard for a Rule 15(c)(3) mistake in *Cornwell* and *Barrow*.

(3) In considering the amount and context of information available to Enron, the Court concluded in the Rule 15(c)(3) Opinion that Rule 15(c)(3) relief was not warranted under *Cornwell* and *Barrow*, even if the concealment under *Byrd* were established. Nonetheless, the Court discussed the *Byrd* case for the sake of addressing all the issues raised by Enron. As mentioned above, the Court considered Lehman's Statement within the *Byrd* analysis and found that the *Byrd* case did not support Enron's concealment argument based upon a misrepresentation under *Byrd*. The *Byrd* case did not discuss the issues of misrepresentation—whether intentionally or negligently—and reliance in connection with concealment of the new defendants' information.[8] *Id.*

 The Court accepted Lehman's explanation that Lehman's Statement accurately reflected what it understood at the time the November 25 Letter was sent. However, the Court recognized that its understanding was factually inaccurate. The Court also recognized that Lehman could have easily verified the accuracy of what it "understood" by comparing the names on the trade confirmations to the named defendants.[9] To establish conceal-

---

8. At the July 27 Hearing, Lehman stated that it "did not do a line by line comparison of the Complaint," before responding to Enron in the November 25 Letter. Transcript of Oral Argument at 30, *Enron v. J.P. Morgan Securities Inc., et al.*, Adv. Pro. No. 03–92677 (July 27, 2006). In response, Enron alleged that Lehman's practice was "grossly negligent."

*Id.* at page 33. That exchange was made in the context of a discussion concerning Lehman's initial disclosure obligations under Rule 26 and the consequences of any violation of those obligations. *See infra* note 17 and accompanying text.

9. Whether the Court should address the issue concerning Lehman's alleged violation of

ment, one would have to establish a misrepresentation with the intent to deceive. *See Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995); *see also Allied Irish Banks, P.L.C., v. Bank of America, N.A.*, No. 03–3748, 2006 WL 278138, at *6 (S.D.N.Y. Feb.2, 2006); *see also* discussion *infra* Part II; Black's Law Dictionary, 1022 (8th ed.2004) (defining "misrepresentation" as "the act of making a false or misleading assertion about something, usu. with the intent to deceive"). However, no evidence has been offered to establish that Lehman intended to mislead or deceive Enron. Nor did Enron raise the issue of intent related to misrepresentation.[10] Enron's concealment argument was not premised upon any alleged intentional conduct. Hence, Enron's concealment argument did not have any underlying basis under *Byrd* and, therefore, was fatally flawed from the outset. Due to this consideration, the issues as to Enron's reliance on Lehman's Statement and the reasonableness of that reliance were irrelevant. Therefore, the Court did not focus on certain issues related to Lehman's Statement.

Further, even though the Court discussed *Byrd*, it recognized many courts have refused to follow that case. *See Cole v. Miraflor*, No. 99 CIV 0977 RWS, 2001 WL 138765, at *1 (S.D.N.Y. Feb. 19, 2001);

*see also Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119, 125 (E.D.N.Y. 2003); *Walters v. NYC Health Hosp. Corp.*, No. 02 Civ. 751(DF), 2006 WL 846711 (S.D.N.Y. Mar.31, 2006). The *Byrd* court, on the one hand, emphasized and examined defense counsel's conduct constituting active concealment. On the other hand, that court focused on the persistent efforts of plaintiff's counsel to obtain the concealed information.[11] *See Byrd*, 964 F.Supp. at 145–46.

In the Rule 15(c)(3) Opinion, the Court considered whether Lehman's conduct, not limited to Lehman's Statement, constituted concealment under *Byrd*, resulting in Enron's failure to name Lehman Japan timely. The Court examined Lehman's disclosure of information in the trade confirmations regarding the Initials LBJ and its refusal, including the basis of such refusal, to provide certain information. The Court considered Lehman's explanation that the confidentiality agreement between Lehman and its clients, including Lehman Japan, prevented it from disclosing more information than in the trade confirmations. In the Rule 15(c)(3) Opinion, the Court did not comment on Lehman's explanation. Rather, the Court found that the issues related to confidentiality between a broker and its client were not

Rule 26(g) arising from its inaccurate statement—one of the New Arguments—will be discussed in Part II. *See* discussion *infra* Part II.

**10.** Enron raised the issue of intent for the first time in the Motion for Reargument. As a part of the New Arguments, Enron argued that Lehman intended that Lehman Japan and the Initials LBJ not be named when Lehman believed that it had no duty to disclose either entity. However, Enron did not provide evidence for such allegation. Further, at the July 27 Hearing, Enron alleged that Lehman was "grossly negligent" in making Lehman's Statement without comparison of En-

ron's first amended complaint. *See supra* note 8 and accompanying text.

**11.** In *Byrd*, plaintiff's counsel first requested disclosure of the name of the defendant. After the first request was rejected by the Corporation Counsel, plaintiff's counsel requested logbooks. *Byrd*, 964 F.Supp. at 143. The counsel's second request was rejected until "either Byrd agreed to bifurcate the trial or bifurcation was determined by motion to the Court." *Id.* "Despite the resolution of the bifurcation issue, Corporation Counsel did not reveal the name of the individual officer, nor turn over log books, as had been requested by plaintiff's counsel." *Id.*

before the Court because a refusal to provide certain information based upon a bona fide dispute did not support a finding of concealment under *Byrd*. *Id.*

With respect to Lehman's Statement, the Court considered it in the context with other representations in the November 25 Letter, such as Lehman's expression of ". . . the disclosure obligations of [Lehman] pursuant to [the November 18 Order] have been fulfilled by our prior production of documents bearing bates numbers LCPI 00001–00055," and Lehman's invitation which welcomed Enron's further inquiries. Further, the Court focused on the word "understand" in Lehman's Statement and how that word should be interpreted in the context of the entire letter.

After considering those factors, the Court found that no evidence demonstrated that Lehman and Lehman Japan refused *repeatedly* to cooperate in providing information regarding Lehman Japan. On the contrary, Lehman provided to Enron information concerning the Initials LBJ, the address, the amount and the CUSIP number of commercial paper transactions with which it was involved. However, Lehman did not provide further information, as it asserted such information was confidential. Lehman's refusal, under the circumstances presented, was not evidence of a *Byrd*-type *repeated* resistance of Enron's discovery efforts because the *repeated* resistance by *Byrd* defense counsel was not premised upon any bona fide disputes. *Id.* Moreover, whether defense counsel exclusively controlled information regarding added defendants was a factor to establish concealment by defense counsel under *Byrd*. *Id.* Because Lehman provided trade confirmations to Enron, information regarding Lehman Japan was not within the exclusive control of Lehman. Therefore, the Court concluded that Enron

failed to establish that Lehman engaged in active concealment under *Byrd*.

Also found in the Rule 15(c)(3) Opinion, Enron knew that the Initials LBJ, like other similarly situated defendants with the initials, must be named as a defendant, and Enron did not provide any plausible rationale that would excuse it from seeking additional information under *Byrd*, if it believed any "contextual information" was necessary to name Lehman Japan. *See* discussion *infra* Part I.c. In making those determinations, the Court considered the issues related to Lehman's Statement. Enron is correct, in that the Court did not focus on the issue of Enron's reliance, but, had the Court focused on that issue, the Court's determinations would not be changed. As discussed below, an examination of Lehman's Statement reveals that Enron's reliance was not reasonable. *See* discussion *infra* Part I.b. Further, even if the Court were to find that Enron's reliance was reasonable, the relief sought by Enron under *Byrd* would still not have been warranted because Lehman's conduct, among other things, did not warrant a finding of active concealment under *Byrd*.

(b) Lehman's Statement

As set forth above, the Court considered Lehman's Statement within the concealment analysis under *Byrd*. In this section, for the purpose of clarification, the Court will discuss the issues related to Lehman's Statement, including whether Enron's reliance was reasonable to support the relief requested.

In the instant matter, Enron argues that the crux of the issues was not about whether it had sufficient information to name Lehman Japan or could have sought additional information to resolve any uncertainty as to Lehman Japan's identity and involvement in the commercial paper

transactions. Rather, Enron asserts that Lehman's Statement resulted in Enron's belief that all entities disclosed by Lehman had been named, and therefore, relying on that statement, Enron ceased seeking any additional information about the Initials LBJ.

The Court disagrees that the Court's focus in the Rule 15(c)(3) Opinion was misplaced. In Enron's Submissions, Enron focused on the argument that it lacked of knowledge regarding the Initials LBJ due to Lehman's acts of concealment. To address that argument and determine whether it made a Rule 15(c)(3) mistake under *Cornwell* and *Barrow,* it was crucial to examine whether Enron had sufficient information to name Lehman Japan, as further discussed below. Similarly, to establish the *Byrd* analysis, it was necessary to examine whether Enron could have sought additional information. Thus, the Court focused on those two issues in the Rule 15(c)(3) Opinion. In the instant matter, Enron directs the Court's attention to its reasonable reliance upon Lehman's Statement. The argument regarding Enron's reliance was never fully developed or clearly articulated in Enron's Submissions. As to the reasonableness of such reliance, as stated previously, Enron chose not to respond to Lehman's challenge in that regard.

At the time Enron received the November 25 Letter, it knew of the existence of the Initials LBJ. In fact, in October 2003, it asked Lehman for information regarding the entities on the trade confirmations, including the Initials LBJ. After Lehman rejected that request, Enron, by its motion for the November 18 Order,[12] requested the Court to direct Lehman to make limited Fed.R.Civ.P. 26(a)(1)(A) initial disclosures related to the Initials LBJ whose

CUSIP Number was 29356AYS9. In response to the November 18 Order, Lehman sent the November 25 Letter to Enron. Lehman's letter provided a general response to the November 18 Order rather than responding specifically to the inquiry regarding the Initials LBJ. The general response was that it believed that its initial disclosure obligations under Rule 26(a)(1)(A) were satisfied because it had provided to Enron all the trade confirmations naming the entities involved in the commercial paper transactions.

■ Regarding the issue of Enron's reliance on Lehman's Statement, Lehman told Enron what Lehman "understood" as to the naming of defendants listed on the trade confirmations. Any reading of Lehman's Statement in the context of the November 25 Letter, especially considering Lehman's use of the word "understand" and its willingness to provide further information, would not lead one to conclude that Enron should have refrained from continuing to pursue information regarding the Initials LBJ. In that letter, Lehman was informing Enron of what it thought about Enron's own complaint. It was simply not reasonable for Enron to rely blindly upon what Lehman thought about Enron's own complaint, when Enron could have taken any number of steps to ensure that Enron had, in fact, named all the parties listed in the trade confirmations already in its possession. Further, Enron could have simply continued its existing discovery efforts that would not have been burdensome.

Now, Enron asserts that it did not notice the inconsistency between the named defendants and the names on the trade confirmations, nor did it know that the Initials LBJ stood for "Lehman Brothers

---

12. The motion for the November 18 Order sought an order directing a number of the defendants involving in this adversary proceeding to provide information.

Japan, Inc.," (previously defined as Lehman Japan) and was involved in the commercial paper transactions until Merrill revealed such on March 25, 2004.[13] The Court does not doubt Enron's assertion that it did not notice the inconsistency or Lehman Japan's involvement as it asserts. However, Enron's failure to notice of inconsistency does not advance Enron's concealment argument. On the contrary, as referenced above, it would have been quite simple for Enron to identify that inconsistency by reviewing Enron's own complaint and then comparing it to the trade confirmations.

In light of the fact that Enron knew of the existence of the Initials LBJ at the time of receiving the November 25 Letter, it was not reasonable for Enron to discontinue seeking clarification from Lehman regarding the Initials LBJ. In addition to being able to seek such clarification concerning the accuracy of Lehman's Statement directly from Lehman, other means were available to Enron to clarify the issue. For example, because the trade confirmations (stating "LBJ ... FOR MERRILL LYNCH INV MGRS ...") revealed Merrill's involvement in the alleged transactions related to the Initials LBJ, Enron did not need to wait until Merrill's disclosure in Merrill's motion for summary judgment. *See supra* note 4 and accompanying

text. Instead, Enron could have taken the initiative to contact Merrill regarding the Initials LBJ. If any of those efforts were unsuccessful, Enron could still have sought the Court's involvement within the statute of limitations. Based upon what Enron knew, especially regarding the information it had in its possession, and what steps it could have taken to verify the accuracy of Lehman's Statement, Enron's reliance on Lehman's Statement was not reasonable. *See Stuart Silver Assocs.*, 245 A.D.2d at 98–99, 665 N.Y.S.2d 415 (holding that "where 'a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations.' ") (citation omitted).

Further, regardless of Lehman's understanding in Lehman's Statement, Enron's duty under *Byrd* to pursue information diligently was not relieved. Moreover, even if concealment were established, Enron still failed to satisfy part of the *Byrd* test that requires plaintiff's counsel to make repeated efforts to pursue the information regarding new defendants. Ultimately, the Court concluded that relief under *Byrd* was not warranted, nor was relief on any other basis set forth in Enron's Submissions under Rule 15(c)(3) warranted.[14] Whether relief was available to

13. On the next day, Enron asserts that it asked Lehman why that information had not been disclosed. The record does not reflect what Lehman did in response to that inquiry.

14. At the December 15 Hearing, Enron argued that the *Byrd* case is essentially an equitable tolling case when it countered the arguments from other defendants. The doctrine of equitable tolling has been applied "in the context of actions based on fraud." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir.1985) (also stating that "the doctrine has been applied in cases alleging causes of action other than fraud where the facts show that the defendant engaged in

conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action") (citations omitted). To apply the doctrine of equitable tolling, the fraud element must be presented. *Id.* Here, no allegation of fraud is made against Lehman. Moreover, the doctrine of equitable tolling requires a plaintiff to exercise reasonable diligence to acquire knowledge of the facts that comprise his cause of action after being informed of sufficient facts to put him on notice. *Id.* (citation omitted). Thus, the doctrine of equitable tolling does not apply in the instant matter because Enron did not conduct reasonable diligence to seek information re-

Enron under some other legal theories, such as those included in the New Arguments, was not the issue before the Court. Enron made its determination as to how to proceed with the Motion for Leave to Amend. Once the Court found, among other things, that Lehman's Statement did not alter Enron's obligation to pursue additional information regarding the Initials LBJ, it concluded in the Rule 15(c)(3) Opinion that relief under *Byrd* was not warranted.

(c) Sufficient Information

■ In *Byrd,* the plaintiff did not have any information to identify the new defendant until the statute of limitations expired.[15] *See Byrd,* 964 F.Supp. at 145–46. As found in the Rule 15(c)(3) Opinion, *Byrd* was not applicable because Enron did have sufficient information, albeit the Initials LBJ instead of the entity's complete name, to name Lehman Japan by using the initials as a defendant within the statute of limitations. In the instant matter, Enron maintains that the Court erred in finding that it had sufficient information to name Lehman Japan as a defendant and urges the Court to reconsider that finding. Enron acknowledges that there was sufficient information regarding the Initials LBJ on the trade confirmations, but argues that because of Lehman's concealment, it did not have the information necessary to corroborate that the Initials LBJ *should* be named as a defendant. Specifi-

cally, Enron asserts that as a result of Lehman's concealment, it did not know whether the Initials LBJ stood for an entity or just an account name. Insofar as Enron is making that assertion, Enron appears to claim that *if* the Initials LBJ stood for an account, Enron would not have named it as a defendant.

However, Enron does not provide any support for its proposition that it thought the Initials LBJ might have represented an account name. As discussed in the Rule 15(c)(3) Opinion, an examination of the first amended complaint revealed that Enron listed account names as defendants, such as "76 MONY CB ACCT.," "07 POOLED ACCOUNT # 7," "PRU/GENERAL LENDING COLLATERAL ACCT. # PIC00006." Those account names either clearly stated "ACCOUNT" or "ACCT." followed by an account number. By contrast, the trade confirmations disclosed the Initials LBJ associated with a *detailed address:* "LBJ ... ARK MORI BUILDING 36TH FLOOR ... TOKYO 107–6036 JAPAN." *See supra* note 4 and accompanying text. Therefore, it is unclear as to why Enron would have thought that the Initials LBJ, without a reference to a number or the word "account," would refer to an account.

Further, even if Enron believed that the Initials LBJ represented an account, it does not provide any credible rationale, other than reliance on Lehman's State-

garding the Initials LBJ from Lehman. If it had any questions regarding the naming of Lehman Japan by the Initials LBJ as a defendant, it should have made further inquires. Lehman's Statement did not prevent Enron from naming Lehman Japan by using the Initials LBJ as a defendant before or after November 25, 2003 and taking further reasonable steps to discover more information regarding Lehman Japan from Lehman after that date. Accordingly, Enron's duty of exercising reasonable diligence to acquire knowl-

edge concerning Lehman Japan was not satisfied.

15. In *Byrd,* the defense counsel "did not reveal the name of the individual officer, nor turn over log books, as had been requested by plaintiff's counsel." *See* the case cited *supra* note 11. In fact, the defense counsel in *Byrd* did not comply with the plaintiff's repeated requests and disclose the name of the new defendant until after the limitations period ran. *Id.*

ment, as to why that account was not named along with the above account defendants. For instance, Enron argues that before naming a defendant it needed other corroborative evidence, in addition to the information on the trade confirmations. Hence, it reasons that it did not name Lehman Japan by the Initials LBJ because it did not have any evidence other than what was contained on the trade confirmations. However, in response to Enron's argument, Lehman asserted that Enron named a computer name at Lehman, "TMS Bridge," as a defendant when Enron did not know who it was. Transcript of Oral Argument at 27–28, *Enron v. J.P. Morgan Securities Inc., et al.*, Adv. Pro. No. 03–92677 (July 27, 2006). Enron did not refute that assertion. If Enron actually followed a policy that necessitated the degree of corroboration it alleges in order to name defendants by the initials on the trade confirmations, it does not seem that such policy was followed in every situation. Moreover, since Enron was naming what appeared clearly to be account names as defendants, any alleged uncertainty as to whether the Initials LBJ stood for an account or an entity should not prevent Enron from naming it. Enron's rationale here is inconsistent with its actions.

Even if the Court had accepted Enron's explanation, the discussion above really begs the question. As found in the Rule 15(c)(3) Opinion, if Enron did not have

"contextual information" it may have needed to determine whether to name Lehman Japan as a defendant by the initials, it should have taken additional steps to pursue further information in order to make that determination. Neither Lehman's Statement nor any other representations in the November 25 Letter relieved Enron of that obligation.

In conclusion, to warrant relief under Rule 9023, the movant must establish that factual matters or controlling precedent were overlooked that could have materially influenced the earlier decision. *See Cioce,* 128 Fed.Appx. at 185. Even though the Court did not discuss certain issues related to Lehman's Statement in the Rule 15(c)(3) Opinion, the Court did not overlook those issues in its consideration of the *Byrd* analysis. As discussed above, Enron's reliance on that statement in support of relief under *Byrd* was not reasonable. Further, even if such reliance were found to be reasonable, relief under *Byrd* would still not have been warranted. Because Enron had sufficient information to name Lehman Japan by the Initials LBJ and had the ability to obtain any clarifying information if it believed such was necessary, it was considered to make a "choice," as such term referenced in *Cornwell,* not to do so. The fact that such choice was not a result of a strategic decision does not affect the analysis under *Cornwell.*[16] As a result,

---

16. The Court concluded that Enron failed to establish that relief was warranted under *Cornwell.* The *Cornwell* court held that when a plaintiff possessed information related to an added defendant's identity and its involvement in the alleged transactions, there is no mistake in identity and the failure to have named that new defendant is considered "a matter of choice." *Cornwell,* 23 F.3d at 705 (holding that "Cornwell was not required to sue them, and her failure to do so in the original complaint, in light of her obvious knowledge and the detailed nature of that pleading's exhibit, must be considered a mat-

ter of choice, not mistake"). In reaching its conclusion, the *Cornwell* court did not find that the plaintiff acted deliberately and intentionally to choose not to name the added defendant in the original complaint. Similarly, the Court considered Enron had made a choice not to name Lehman Japan under the *Cornwell* test after finding that it had sufficient information to name Lehman Japan with the Initials LBJ as a defendant in its first amended complaint but did not do so. In the Rule 15(c)(3) Opinion, the Court did not find that Enron deliberately and intentionally

any issue related to Lehman's Statement would not have materially influenced determinations in the Rule 15(c)(3) Opinion. Hence, there is no basis to grant the relief sought by Enron under Rule 9023. Enron had sufficient information to name Lehman Japan by the Initials LBJ. Enron's only argument that is consistent with its actions is that it ceased adding another defendant related to the trade confirmations because it relied upon Lehman's Statement. As discussed previously, that reliance for the purposes asserted was not reasonable.

## II.

■ In the instant matter, Enron raises the New Arguments in order to justify the relief sought. The New Arguments fit into two general categories of allegations (i) Rule 26 violations, and (ii) fraudulent concealment under common law. Regarding the former, Enron alleges that Lehman violated its initial disclosure obligations under Rule 26 and that a sanction

under Rule 37, permitting the relation-back of Lehman Japan to its first amended complaint due to Lehman's violation of Rule 26, is warranted. Regarding the latter, Enron argues some, but not all, of the elements of fraudulent concealment. To establish fraudulent concealment, a plaintiff must meet its burden of proving each of the following elements (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, (4) the plaintiff suffered damage as a result of such reliance, and (5) the defendant had a duty to disclose the material information. *Banque Arabe et Internationale D'Investissement,* 57 F.3d at 153; *see also Allied Irish Banks, P.L.C.,* 2006 WL 278138, at *6.

■ However, in Enron's Submissions, Enron did not raise arguments related to either a Rule 26 violation[17] or

---

chose not to name Lehman Japan. Nor did the Court conclude that Enron made a "strategic choice" as discussed in *Randall's Island.* The Court concluded that a Rule 15(c)(3) mistake under *Randall's Island* was not met because there was no misidentification of Lehman Japan even though it did not make a strategic choice.

17. In raising a Rule 26(a)(2)(A) violation in the New Arguments, Enron requests the Court treat the November 25 Letter as part of court-ordered initial disclosures under Rule 26(a), which are the equivalent of court-ordered interrogatory answers. If the November 25 Letter were treated as court-ordered interrogatory answers, Enron asserts that it had an "absolute right" to rely on the letter, including Lehman's Statement, and cease its efforts to pursue contextual information it may have needed to name Lehman Japan as a defendant.

Rule 26(a)(1)(A) requires individuals with relevant knowledge to provide to the parties: "the name and, if known, the address and telephone number of each individual likely to

have discoverable information that the disclosing party may use to support its claims or defenses ... identifying the subjects of the information ..." Fed.R.Civ.P. 26(a)(1)(A). The November 18 Order, under Rule 26(a)(1)(A), directed Lehman to initially disclose the name, and if available, the address and telephone number of the entity under CUSIP Number 29356AYS9 in connection with the commercial paper transactions. Arguably, the sentence, stating that "the disclosure obligations of [Lehman] pursuant to [the November 18 Order] have been fulfilled by our prior production of documents bearing bates numbers LCPI 00001–00055," would be treated as an equivalent of an interrogatory answer because it directly responded to the November 18 Order.

In response to Enron's arguments surrounding Lehman's initial disclosure obligations, Lehman argues that because they are new and not raised timely, they should not be considered. As a result, Lehman did not respond to, among the others, the issue of whether the November 25 Letter was an initial disclosure—equivalent to a court-ordered

fraudulent concealment as an independent basis for relief. Nor did it raise these issues to buttress its *Byrd* argument. Instead, *Byrd* was the sole legal basis for Enron's concealment argument. As a result, the Court made the concealment analysis within the purview of *Byrd* in the Rule 15(c)(3) Opinion.

With respect to Enron's current concealment argument, Enron intertwines the New Arguments with elements of fraudulent concealment to further support the relief sought under *Byrd.* For example, the arguments related to violation of initial disclosures under Rule 26 may be asserted to establish that Lehman violated a duty to disclose the material information—one of the independent elements of fraudulent concealment. *See Banque Arabe et Internationale D'Investissement,* 57 F.3d at 153; *see also Allied Irish Banks,* 2006 WL 278138, at *6. Another example is the issue raised in the New Arguments related to Enron's "absolute right" to rely on Lehman's Statement. That argument relates to another element of fraudulent concealment—reasonable reliance. *See id.*

If the New Arguments were intended to serve as a basis to support Enron's *Byrd* concealment argument, those arguments would not result in the granting of relief. As previously discussed, reliance upon what Lehman represented it "understood" would not warrant relief under *Byrd.*

■ If the New Arguments were intended to serve as a basis independent of *Byrd,* the Court notes that fraudulent concealment must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *See Allied Irish Banks,* 2006 WL 278138, at *5; *see also* Fed. R.Civ.P. 9(b). Enron failed to do so in Enron's Submissions. The Court finds that it is too late for Enron to raise the New Arguments, whether as a part of the *Byrd* analysis or a separate basis for relief, under Rule 9023.

---

interrogatory. Rather, it asserts that it acted in good faith when making Lehman's Statement, and that the Court should read that statement in connection with other sentences in the November 25 Letter. Procedurally, even if Lehman's Statement were found to be within Lehman's initial disclosures under Rule 26(a), the Court agrees with Lehman that the issues related to Rules 26 and 37 are not raised timely.

Regarding Enron's argument concerning its "absolute right" on relying on Lehman's Statement, even if Enron's argument that the entire November 25 Letter, including Lehman's Statement, was the equivalent of a court-ordered interrogatory answer were reached and sustained, the case advanced by Enron does not appear to support its "absolute right" argument. Enron cited *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1201 (3d Cir.1989), in which it is stated in dicta that

A litigant is entitled to accept answers to previous interrogatories as true, and to refrain from seeking additional discovery directed to the same issue. Because the Federal Rules of Civil Procedure are structured to elicit truthful answers given under oath,

the opposing party, *in circumstances such as presented here, may reasonably* rely on interrogatory answers.

*Id.* (emphasis added). By considering all circumstances of the case, the *Averbach* court took a case-by-case approach, rather than a bright-line rule, to determine whether a party may *reasonably* rely on interrogatory answers. *Id.* The right for a party to rely on interrogatory answers is not "absolute" as asserted by Enron. Rather, the Third Circuit in *Averbach* stated a proposition that courts need to consider the totality of circumstances to determine reasonableness of a party's reliance. As discussed in Part I.b., a case-by-case analysis here would not support Enron's argument under *Byrd* concerning its reliance on Lehman's understanding regarding the named defendants in Lehman's Statement. *See* discussion *supra* Part I.b. Whether the relief was sought under *Byrd* or independent of *Byrd,* if Lehman's Statement were found to be a Rule 37 violation, there would be an issue as to whether granting leave to amend would be appropriate in this case where Enron's reliance was found not to be reasonable to cease its discovery efforts.

All the operative facts that would support any of the relief sought by Enron in the New Arguments were known already to Enron prior to its seeking the first amended complaint. There is no dispute that Enron was aware of the inaccuracy in Lehman's Statement at least as of March 25, 2004 when Merrill disclosed Lehman Japan's involvement in the alleged commercial paper transactions to Enron. However, when Enron filed the Initial Pleadings in July 2005, it did not raise the New Arguments even though the operative facts to support those arguments were available to it. It was Enron's burden to plead in Enron's Submissions, any arguments that related to Lehman's Statement, including fraudulent concealment and any Rule 26 violations, as a separate basis for relief—e.g. independent of *Byrd.* However, Enron did not do so.

In terms of Enron's assertion that it was entitled to respond to Lehman's challenge as to the reasonableness of its reliance, the Court finds that there is a fundamental problem with this premise. As discussed previously, Enron raised the issue of its reliance on Lehman's Statement in making its concealment argument under *Byrd,* and therefore, Enron should have foreseen the issue concerning the reasonableness of its reliance be placed before the Court. In fact, Lehman challenged the reasonableness of Enron's reliance as soon as Enron asserted its concealment argument premised upon Lehman's Statement. There is no question that Lehman acted timely in this regard. However, Enron did not respond to Lehman's challenge or preserve any right to do so. The Court finds that Enron had sufficient time and opportunity

to address the New Arguments as part of its responses prior to the issuance of the Rule 15(c)(3) Opinion.

Therefore, Enron presents no basis to allow any of the New Arguments to be considered at this time. Courts in the Second Circuit have held that a "motion to reconsider should not give the moving party another bite at the apple by permitting argument on issues that could have been or should have been raised prior to the original motion." *Sequa Corp.,* 156 F.3d at 144.

In conclusion, the Court finds that Enron's failure to raise the New Arguments in Enron's Submissions is not excusable and, therefore, Rule 9023 does not permit Enron to argue the issues that could or should have been raised prior to the Initial Pleadings.

### III.

■■■ Enron argues that the Court's denial of the relation-back of Lehman Japan to Enron's first amended complaint results in manifest injustice under Rule 9023.

The Court disagrees. Enron has not provided any case law interpreting the doctrine of manifest injustice under Rule 9023. Nor has the Court found a case articulating what constitutes manifest injustice under that rule. Further, the definition of "manifest injustice" in the Black's Law Dictionary[18] does not provide much guidance to the instant matter.

The *Chalick* case, which is cited by Enron to support its argument regarding manifest injustice, did not discuss the doctrine of manifest injustice. *Chalick v. Cooper Hosp.,* 192 F.R.D. at 153.[19] However,

18. "Manifest injustice" is defined as "[a]n error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution re-

scinds." Black's Law Dictionary, 982 (8th ed.2004).

19. In *Chalick,* the initial disclosure obligations pursuant to Rule 26(a)(1)(A) were not

it did discuss that a sanction resulting in a relation-back of a new defendant to the original complaint under Rule 37(c)(1) was consistent with equitable principles because another defendant who shared the identity of interest with such new defendant failed to comply with Rule 26(a). *Id.* at 152. Citing *Chalick*, Enron argues, in order to achieve fairness and justice, a sanction pursuant to Rule 37(c)(1) resulting in the relation-back of Lehman Japan under Rule 15(c)(3) to the first amended complaint is warranted because Lehman violated Rule 26 due to its misrepresentation. *Id.*

*Chalick* involved a timely raised assertion that the defendants had not complied with their obligations under Rule 26(a)(1)(A). In the instant matter, the Court has found that Enron has not provided any justification for its failure to raise timely the New Arguments, including any basis for a sanction under Rule 37(c)(1). *See* discussion *supra* Part II. To the extent that the *Chalick* case would support the relief sought by Enron, it had an opportunity to raise that case in support of its Rule 15(c)(3) relief but did not to do so. Such failure hardly could warrant a finding of manifest injustice under Rule 9023 because there is no justification for Enron not raising any Rule 37(c)(1) arguments timely.

Further, a finding of manifest injustice under Rule 9023 would likely involve some

presence of unfairness as a result of courts' original rulings. Such a finding would not be appropriate in the instant matter. There is no evidence that any inaccuracy in the November 25 Letter, including Lehman's Statement, resulted from an intentional or inequitable conduct. In addition, the degree of the culpability arising from Lehman's Statement, if any, must be balanced by Lehman's previous disclosures of information regarding the Initials LBJ and its (the entity represented by the Initials LBJ's) involvement in the commercial paper transactions.

■ Moreover, the parties here are sophisticated and represented by competent counsel. As stated above, it appears that a finding of manifest injustice in a civil matter requires the presence of either some unfair advantages taken by an opposing party or clear inequity warranting relief; however, neither is present here. The Court finds that the Rule 15(c)(3) Opinion did not result in manifest injustice. Therefore, there is no basis to grant Enron relief based upon manifest injustice under Rule 9023.[20]

### Conclusion

Enron had sufficient information to name Lehman Japan by using the Initials LBJ. Even if Enron's concealment argument under *Byrd* were established, considering the amount and context of the information available to Enron, the Court

complied by defendants because they did not provide information about the added defendant other than his name, resulting in the plaintiff's failure to identify his participation in the alleged action, timely add him as a defendant and provide him notice. *Id.* at 151 (stating that "Defendants failed to comply with their disclosure obligations under Rule 26(a)(1)(A), because they provided no information about Dr. Burns other than his name. They did not provide the basis of his knowledge, as required by the rule.").

**20.** The Court notes that remedy for recovering any loss from Lehman Japan may be still available to Enron under section 550(f) of the Bankruptcy Code, if Lehman Japan was found to be a subsequent transferee or beneficiary of the commercial paper transactions. Under section 550(f), an action to recover avoided transfers of property must be brought no later than the earlier of one year after the transfer was avoided or the date the case is closed or dismissed. 11 U.S.C. § 550.

**364**

concluded that Rule 15(c)(3) relief under *Cornwell* and *Barrow* was not warranted. Moreover, the Court found that Enron's failure to name timely Lehman Japan did not result from "concealment" under *Byrd.* Therefore, no basis set forth in Enron's Submissions warranted relief for Enron.

The Court does not reach any of the New Arguments because none of them were raised timely. Nonetheless, the Court notes that any of such arguments related to reliance on Lehman's Statement would fail based upon the Court's determination, regarding the *Byrd* analysis, that such reliance was not reasonable. Further, in order to impose a Rule 37 sanction on Lehman Japan certain factual and legal conclusions, which are in dispute, would have to be found in Enron's favor. The Court, however, does not reach whether Rule 37 relief was available to Enron because, as stated above, the issue was not raised timely.

Based upon the foregoing reasons, Enron has failed to establish that (i) the Court overlooked Lehman's Statement in its concealment analysis, or, even if it had, that the oversight would have materially altered the Rule 15(c)(3) Opinion denying Lehman Japan to be related back to Enron's first amended complaint; (ii) any of the New Arguments were raised timely and therefore should be considered by the Court; or (iii) manifest injustice would occur if the relief sought were not granted. The Court hereby denies Enron's request to alter or amend the Rule 15(c)(3) Opinion pursuant to Rule 9023.

Counsel for Lehman and Lehman Japan is to settle an order consistent with this opinion.